388 So.2d 359 (1980)
STATE of Louisiana
v.
Roger S. BOURGEOIS.
No. 66656.
Supreme Court of Louisiana.
September 3, 1980.
Rehearing Denied October 6, 1980.
*360 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., Abbott J. Reeves, James Maxwell, Asst. Dist. Attys., for plaintiff-appellee.
Michael S. Fawer, Matthew H. Greenbaum, Jean Williams, New Orleans, for defendant-appellant.
MARCUS, Justice.
Roger S. Bourgeois was charged by bill of information with possession with intent to distribute cocaine in violation of La.R.S. 40:967. Defendant filed a motion to suppress the 44 grams of cocaine found during a search without a warrant of his suitcase at New Orleans International Airport. After a hearing, the trial judge denied the motion, finding that defendant had consented to the search. Defendant withdrew his former plea of not guilty and entered a plea of guilty as charged, reserving his right to *361 appeal the ruling of the trial judge denying the motion to suppress. State v. Crosby, 338 So.2d 584 (La.1976). After determining that the plea was made voluntarily and with understanding of the nature of the charge, the trial judge accepted the plea of guilty. A presentence investigation was ordered. Subsequently, defendant was sentenced to serve fifteen years at hard labor. On appeal, defendant relies on two assignments of error for reversal of his conviction and sentence.

ASSIGNMENT OF ERROR NO. 1
Defendant contends the trial judge erred in denying his motion to suppress the 44 grams of cocaine found during a search without a warrant of his suitcase at New Orleans International Airport.
At the suppression hearing, Raymond Egan, special agent with the Drug Enforcement Administration in New Orleans, testified that he was informed by Officer Bill Johnson of the Dade County Sheriff's Office in Miami, Florida, on February 1, 1978, that Johnson had spoken to defendant at the Miami Airport and that defendant exhibited signs of nervousness and changed his story when questioned. Johnson told Egan that he observed defendant check his suitcase at the ticket counter and that it was thereafter placed on a plane bound for New Orleans. Johnson described the suitcase as a "dark bag with a red letter `N' on it" and informed Egan of the claim check number of the bag. Due to heavy fog, planes were rerouted and people were transferred from one plane to another. Neither defendant nor his bag could be located that night.
The next morning, Egan received another call from Miami informing him that defendant would be arriving in New Orleans at 5:00 p. m. aboard a National Airlines flight. Defendant's suitcase arrived in New Orleans about 2:00 p. m. that afternoon. A K-9 dog, trained in sniffing for narcotics, signalled the presence of drugs in the bag. The bag was kept under surveillance. Defendant arrived at about 5:00 p. m. as expected. He proceeded to the baggage area where he remained standing near the exit door looking nervously in all directions. Despite the fact that his bag came around twice on the conveyor belt, he did not retrieve it. Defendant suddenly turned and "bolted" through the exit door. Egan pursued and stopped him in the parking lot. He identified himself as a federal agent and in response to defendant's inquiry about the reason for the stop, Egan told him that he must have either left his bag behind or lost it on a flight. Defendant replied that he had no bag with him. Egan then asked defendant to accompany him to his office inside the terminal to determine if the bag referred to by Egan did in fact belong to defendant.
Egan and defendant returned to the terminal where they were met by another agent carrying the suitcase. Egan advised defendant of his Miranda rights upon entry into the building. The two agents accompanied defendant to the third floor office which was used jointly by DEA and the local sheriff's office. Enroute to the office, defendant denied ownership of the bag. Once inside the office, Egan began preparing an application for a warrant to search defendant's suitcase. As he was doing so, defendant continued to deny ownership of the bag and asked questions. Egan informed defendant that he was preparing an application for a search warrant. Egan testified that he prepared the warrant application because he did not expect defendant to consent to a search of the bag due to his repeated denials of ownership. Defendant asked to make a phone call to an attorney but Egan would not allow him to do so, advising defendant that he could make the call after the search.
In response to defendant's repeated denials of ownership of the bag, Egan informed defendant that he did not have to say anything and that he (Egan) would rather that he did not. Egan then asked defendant if he wanted to cooperate with the authorities as they knew the bag belonged to him. Defendant inquired as to what such cooperation entailed. Egan replied that he would have to sign a consent to search form and *362 give them information regarding the source of the drugs. Defendant then asked, "What good would it do me? What will you give me for it?" Egan replied, "I can't give you anything. All I can tell you is that we work with the District Attorney and I will let the District Attorney know what you did. I will let the presiding judge know what you did." Defendant then stated, "O.K. fine, I will cooperate with you. What form I have to sign?" At that point, defendant signed a consent to search form which was admitted in evidence at the suppression hearing. After defendant signed the form, the suitcase was opened. It contained 44 grams of cocaine, several other drugs and some clothing.
In response to defendant's request to be released, Egan asked, "What kind of bond can you make?" Defendant replied by seeking release on a "P.R. bond." Egan replied that he would have to make "some kind of bond." Egan stated that defendant got "huffy and puffy, and he got mad and didn't want to talk to us anymore." Defendant then called his attorney. Egan stated that, after the suitcase was open, defendant no longer denied its ownership. Although defendant never affirmatively admitted ownership of the bag, he clearly acknowledged its ownership by agreeing to cooperate, signing the consent to search form, and informing the officer of the identity of a drug found in the bag.
Defendant's testimony differed from that of Agent Egan in that he testified that an agent had already unzipped the bag and pulled out a pair of trousers at the time he signed the consent to search form and that he was not orally informed of his Miranda rights. Defendant admitted that he denied the bag belonged to him, that Egan informed him that he was going to procure a warrant to search the bag, and that the consent to search form was not produced until later when his cooperation was discussed.
Unreasonable searches and seizures are prohibited by the fourth amendment to the federal constitution and by section 5 of article 1 of our state constitution. It is well settled under the fourth and fourteenth amendments that a search conducted without a warrant issued upon probable cause is "per se unreasonable ... subject only to a few specifically established and well-delineated exceptions." Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); Katz v. United States, 389 U.S. 347, 83 S.Ct. 507, 19 L.Ed.2d 576 (1967). It is equally well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent. Schneckloth v. Bustamonte, supra; State v. Johnson, 380 So.2d 32 (La.1980). Hence, a search conducted pursuant to a valid consent is constitutionally permissible. Moreover, when the state seeks to rely upon consent to justify the lawfulness of a search, it has the burden of proving that the consent was, in fact, freely and voluntarily given. Schneckloth v. Bustamonte, supra; Bumper v. North Carolina, 391 U.S. 543 (1968); State v. Johnson, supra. It is only by analyzing all the circumstances of an individual consent that it can be ascertained whether in fact it was voluntary or coerced. Therefore, the validity of the consent is determined by the facts and circumstances of each case. Schneckloth v. Bustamonte, supra; State v. Johnson, supra. The question of consent is one of fact. State v. Dunbar, 356 So.2d 956 (La.1978); State v. Temple, 343 So.2d 1024 (La.1977). The determination of the trial judge, who has the opportunity to hear and observe the witnesses, is entitled to great weight on review. State v. Dunbar, supra; State v. Temple, supra. The fact that a person was not warned of his right to refuse to consent to the search is only one factor to be considered in determining the voluntary nature of the consent. Schneckloth v. Bustamonte, supra.
Whether defendant was under arrest at the time of the consent is a factor to be considered in determining whether defendant voluntarily consented to the search. State v. Johnson, supra. The fact of custody is to be considered in that determination *363 but custody does not of itself render the consent involuntary. United States v. Watson, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976). La.Code Crim.P. art. 201 defines "arrest" as follows:
Arrest is the taking of one person into custody by another. To constitute arrest there must be an actual restraint of the person. The restraint may be imposed by force or may result from the submission of the person arrested to the custody of the one arresting him.
The statutory definition of "arrest" is keyed to the concept of restraint. It is the circumstances indicating an intent to effect an extended restraint on the liberty of an accused, rather than the precise timing of an officer's statement: "You are under arrest," that are determinative of when an arrest is actually made. State v. Tomasetti, 381 So.2d 420 (La.1980); State v. Marks, 337 So.2d 1177 (La.1976); State v. Warren, 283 So.2d 740 (La.1973). In the instant case, we are convinced that defendant was arrested when he was stopped by Agent Egan as he attempted to leave the airport and was taken by Egan to his office for questioning. Defendant was unmistakably restrained; he was under arrest. The fact that defendant was not verbally advised that he was under arrest until after the suitcase was subsequently opened does not alter the fact of arrest.
A warrantless arrest, no less than an arrest pursuant to a validly-issued warrant, must be based on probable cause. State v. Thomas, 349 So.2d 270 (La. 1977). Probable cause exists when the facts and circumstances known to the arresting officer and of which he has reasonably trustworthy information are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed a crime. Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); State v. Marks, supra. Probable cause must be judged by the probabilities and practical considerations of everyday life on which average men, and particularly average police officers, can be expected to act. State v. Tomasetti, supra; State v. Marks, supra.
In the instant case, Agent Egan had received information from Officer Johnson that defendant had acted suspiciously when questioned at the Miami Airport. Egan had also been given a description of defendant's suitcase and its claim check number. Prior to defendant's arrival in New Orleans, the presence of drugs had been signalled by a dog trained in their detection. Upon his arrival in New Orleans, defendant failed to claim the suitcase, although it was visible to him on the baggage conveyor belt, and he hurriedly attempted to leave the airport without claiming the bag. We conclude that ample probable cause existed prior to the arrest of defendant.[1]
We also conclude as did the trial judge, after considering all the facts and circumstances, that defendant voluntarily consented to the search of his suitcase. Although defendant initially denied ownership of the suitcase, as Agent Egan was preparing the application for a search warrant, defendant agreed to cooperate with the authorities and specifically inquired as to what he could do. Consenting to the search and signing the consent to search form were responses to his inquiry. The authorities agreed to report his cooperation to the district attorney and the court. It is obvious that defendant knew that the authorities had knowledge that the suitcase belonged to him and contained drugs and that the discovery of the drugs would only be a matter of time until the search warrant *364 would be obtained. Hence, it served his purpose to cooperate by consenting to the search. Admittedly, defendant's request for an attorney was denied while Agent Egan was preparing the application for the search warrant. Defendant was advised that he could make the call after the search. A person's sixth and fourteenth amendment right to counsel attaches only at or after the time that adversary judicial proceedings have been initiated against him. Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972). Clearly, defendant's right to counsel had not attached at the time his request was made. Nor was defendant being interrogated thereby invoking his right to counsel upon request. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Hence, Agent Egan's denial of his request was not improper. After the search took place, defendant did in fact call his attorney from the airport office.
In view of the foregoing, we are unable to say that the trial judge erred in denying defendant's motion to suppress. Assignment of Error No. 1 is without merit.

ASSIGNMENT OF ERROR NO. 2
Defendant contends the trial judge erred in failing to comply with the sentencing guidelines set forth in La.Code Crim.P. art. 894.1.[2] He further argues that the sentence imposed is excessive.[3]
At the sentencing hearing, the trial judge sentenced defendant to serve fifteen years at hard labor. The trial judge gave no reasons for the imposition of that sentence, except that he noted that he had considered the information provided in the *365 presentence investigation report. We conclude that the trial judge did not comply with La.Code Crim.P. art. 894.1(C), which requires that the trial judge state for the record the considerations taken into account and the factual basis therefor in imposing sentence.
In State v. Sepulvado, 367 So.2d 762 (La.1979), we stated that the statutory criteria legislatively provided by La.Code Crim.P. art. 894.1 provides appropriate criteria by which to measure whether a sentence within statutory limits is nevertheless excessive, either by reason of its length or because it specifies confinement rather than less onerous sentence alternatives. We further noted that the trial judge's reasons in imposing sentence, as required by this statute, are an important aid to this court when called upon to exercise its constitutional function to review a sentence complained of as excessive. Absent compliance with La.Code Crim.P. art. 894.1, as in the instant case, we lack appropriate criteria by which to measure whether the sentence imposed is excessive. Accordingly, we must vacate defendant's sentence and remand the case to the trial court with instructions to properly consider the sentencing guidelines in the statute before imposing sentence.

DECREE
For the reasons assigned, defendant's conviction is affirmed but the sentence imposed is vacated and set aside, and the case is remanded to the district court with instructions to the trial judge to sentence defendant in accordance with law.
DIXON, C. J., concurs with reasons.
DIXON, Chief Justice (concurring).
I believe there was probable cause to arrest and the search (and seizure) of the suitcase was incidental to the lawful arrest.
LEMMON, Justice, concurring in denial of application for rehearing.
Defendant's argument that refusal of counsel vitiated his consent to the search fails to distinguish between Fourth and Fifth Amendment rights.
In the determination of whether the consent to search was valid, the presence of counsel is only one factor to be considered. The denial of counsel does not automatically destroy the efficacy of otherwise valid consent.
NOTES
[1] The state has not argued that the search in the instant case was justified as one incident to a lawful arrest of defendant. It can well be argued in these circumstances that the search in the instant case was justified as one incident to a lawful arrest and that the suitcase was within defendant's immediate control at the time of the search. See Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); State v. Tomasetti, 381 So.2d 420 (La.1980). Arkansas v. Sanders, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979), relied upon by defendant, is distinguishable from the instant case in that the search there involved an automobile and that, at the time of the search, the luggage searched was not within the immediate control of the defendant.
[2] Defendant did not object on this ground at the time of sentencing. However, we have held that, even without formal objection at the time of sentencing, where the trial judge imposes a sentence without adequate compliance with the mandatory requirements of La.Code Crim.P. art 894.1, this court may vacate a sentence and remand for resentencing when the reasons for an apparently severe sentence in relation to the particular offender and the actual offense committed do not appear in the record. State v. Gist, 369 So.2d 1339 (La.1979); State v. Cox, 369 So.2d 118 (La.1979).

La.Code Crim.P. art. 894.1 provides:
A. When a defendant has been convicted of a felony or misdemeanor, the court should impose a sentence of imprisonment if:
(1) There is an undue risk that during the period of a suspended sentence or probation the defendant will commit another crime;
(2) The defendant is in need of correctional treatment or a custodial environment that can be provided most effectively by his commitment to an institution; or
(3) A lesser sentence will deprecate the seriousness of the defendant's crime.
B. The following grounds, while not controlling the discretion of the court, shall be accorded weight in its determination of suspension of sentence or probation:
(1) The defendant's criminal conduct neither caused nor threatened serious harm;
(2) The defendant did not contemplate that his criminal conduct would cause or threaten serious harm;
(3) The defendant acted under strong provocation;
(4) There was substantial grounds tending to excuse or justify the defendant's criminal conduct, though failing to establish a defense;
(5) The victim of the defendant's criminal conduct induced or facilitated its commission;
(6) The defendant has compensated or will compensate the victim of his criminal conduct for the damage or injury that he sustained;
(7) The defendant has no history of prior delinquency or criminal activity or has led a law-abiding life for a substantial period of time before the commission of the instant crime;
(8) The defendant's criminal conduct was the result of circumstances unlikely to recur;
(9) The character and attitudes of the defendant indicate that he is unlikely to commit another crime;
(10) The defendant is particularly likely to respond affirmatively to probationary treatment; and
(11) The imprisonment of the defendant would entail excessive hardship to himself or his dependents.
C. The court shall state for the record the considerations taken into account and the factual basis therefor in imposing sentence.
[3] Defendant did not object on the ground of excessiveness at the time of sentencing. However, we have held that no objection is required as to excessiveness at the time of sentencing to preserve the issue for appellate review when raised by assignment of error to this court. State v. Gist, 369 So.2d 1339 (La.1979); State v. Cox, 369 So.2d 118 (La.1979).