FRED W. JONES, Jr., Judge.
The state supreme court granted writs in this matter and transferred the case to us for “briefing, argument and an opinion” concerning whether the trial judge erred in denying defendant’s motion to suppress evidence obtained as a result of the warrant-less search of a third party’s residence. 526 So.2d 1122.

Factual Context

On January 6, 1988 at about 1:00 p.m. Sgt. Freeman of the Bastrop Police Department received a telephone call from an anonymous informant who had provided reliable information on a number of occasions. The informant stated that cocaine was being cut and prepared for distribution at the home of one Fannie Phillips. The cocaine allegedly belonged to Charles Bradford, who would be leaving the house with his brother, Arthur Bradford. A description was given of the Bradfords’ car, including the numbers of the Michigan license plate. In addition, the informant described the layout of the Phillips’ dwelling and told where he had seen the cocaine.
Sgt. Freeman contacted Detective Wyles and Capt. Alan Freeman. Surveillance of the Phillips house was begun at approximately 1:20 p.m. It was verified that the previously described automobile was parked at the Phillips dwelling. Capt. Freeman and Sgt. Freeman parked down the road. Observing two black males leaving in the car with Michigan license plates, they radioed a patrol unit to stop the vehicle. This was done some blocks away from the Phillips residence.
*1106 As a result of a search of the car, drug paraphernalia was found but no drugs. An officer conducted a “pat down” search of Charles Bradford and found a loaded .38 caliber pistol concealed on his person. Charles Bradford was placed under arrest and taken to the Bastrop Police Department. Upon arrival there, Sgt. Freeman contacted an assistant district attorney who advised the police officers to secure the Phillips house and, if necessary, a search warrant would be obtained.
At about 2:15 p.m., Capt. Freeman, Sgt. Freeman, Det. Wyles and Sgt. Burrell arrived at the Phillips residence. Sgt. Freeman and Sgt. Burrell went to the front entrance while the other two went to the back. At the front entrance, the officers knocked and announced “police”, but nobody responded. Sgt. Burrell pushed the door open with his shoulder and they entered. Although the bedroom door was closed, the officers heard persons talking within, and entered that room. Melvin Watkins, who was living with Fannie Phillips, was moving toward a cedar chest, which the informant had described. Sgt. Freeman drew his weapon and ordered Watkins to stop.
By this time Capt. Freeman and Det. Wyles had come through the front entrance and assisted in questioning the parties. They were informed that Bradford had been arrested and that the officers desired to search the house. The latter stated that they could get a search warrant within the hour or that Ms. Phillips, who was renting the house, could execute a consent to search. In either case, no one would be permitted to leave the house until the search was completed. Ms. Phillips expressed some concern over the involvement of minor children who were in the house.
Watkins and Ms. Phillips were placed in separate rooms, and the children were sent to the kitchen. Ms. Phillips requested and was permitted to discuss the proposed “consent to search” with Watkins. She then decided to sign the form handed to her by the officers.
The ensuing search yielded 14 packets of cocaine in addition to drug paraphernalia. As a consequence, Charles Bradford was charged with possession of cocaine with intent to distribute. Bradford filed a motion to suppress evidence seized as a result of the search, contending that the warrant-less search was unconstitutional. Ruling that the consent to search was valid, the trial court reasoned:
“The Court finds that this consent, permission for search and seizure, was not obtained under duress, that it was a legal permission for search and seizure, that the initial intrusion into the house was warranted because of existing circumstances ...”
Seeking writs, the defendant argued that the trial court erred in holding that the initial entry into the Phillips house was legal and that the occupants of the house freely and voluntarily consented to the search of same.

Legality of Warrantless Entry

Absent exigent circumstances, the 4th Amendment to the U.S. Constitution and Article I, § 5 of the La. Constitution of 1974 prohibit police officers from making a warrantless or non-consensual entry into a suspect’s home. Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980); State v. Cantanese, 493 So.2d 725 (La.App.2d Cir.1986).
Here, there is no question but that the officers entered the Phillips house without a search warrant and without the consent of Ms. Phillips. There was apparently time to secure a search warrant. If exigent circumstances existed, evidence of such was not presented at the hearing on the motion to suppress. There was no indication that the occupants of the Phillips dwelling were aware of the stop of the Bradford automobile.
Therefore, we conclude that the entrance of the Phillips residence was illegal. The next question is: how did that affect the validity of the “consent to search”?

Validity of Consent to Search

As pointed out in State v. Owen, 453 So.2d 1202 (La.1984), a search conducted *1107 without a warrant issued upon probable cause is per se unreasonable subject to only a few specifically established and well-delineated exceptions, one of which is a search conducted pursuant to consent. When the state seeks to rely upon consent to justify the lawfulness of a search, it has the burden of proving the consent was given freely and voluntarily. Further, if the consent was obtained after an illegal entry, that consent could be deemed valid only if it was the product of a free will and not the result of exploitation of the previous illegality. Among the factors considered in determining whether the consent was sufficiently attenuated from the unlawful conduct to be a product of a free will are whether the police officers adequately informed the individual that he need not comply with the request, the temporal proximity of the illegality and the consent, the presence of intervening circumstances and, particularly, the purpose and flagrancy of the official misconduct.
At the hearing on the motion to suppress, Ms. Phillips and Watkins claimed that the officers threatened to arrest everyone in the house; the officers said they would remain until the drugs were found; that police dogs would be brought in; that Bradford had admitted drugs were in the house; that Sgt. Burrell injured Phillips’ teenage son when Burrell pushed the door open; that the officers said they would take Phillips’ son away if she refused to cooperate; and the officers promised no one would be arrested if the consent form was signed.
The state introduced the written “consent to search”, which had been filled out by Capt. Freeman. The latter denied that any promises or threats were made. He conceded Ms. Phillips was informed if she did not consent to the search, all household occupants would have to remain until a search warrant was secured. Sgt. Freeman corroborated the testimony of the captain and denied telling Ms. Phillips that police dogs would be brought in if she did not sign the consent form.
We note that at the preliminary examination both Ms. Phillips and Watkins testified that Ms. Phillips signed the “consent to search” because she had nothing to hide. They stated that consent was given without threat or coercion from the police officers.
Defendant argues that the consent was invalid because it was a product and exploitation of the illegal entry. This was, of course, based upon an unqualified acceptance of the testimony of Ms. Phillips and Watkins at the hearing on the motion to suppress. The trial judge apparently viewed the testimony of the officers as more credible. Whether an individual consented to a search is a question of fact to be determined under the totality of the facts and circumstances of the case. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); State v. David 425 So.2d 1241 (La.1983).
Here, Ms. Phillips signed the consent form. Capt. Freeman and Sgt. Freeman testified they informed her that she could refuse the request to search. She was given time to discuss this question with Watkins. Consequently, as to “temporal proximity” between the illegal entry and the signing of the consent form, there was a sufficient delay to eliminate any presumption the consent was the result of the entry. Considering the “purpose and flagrancy” of the official misconduct, there is no evidence that the Phillips house was “stormed”. When no one responded to the knock on the front door by the officer, only such force was used as to effect an entry.
Simply advising a person that if he does not consent the police will seek a search warrant does not vitiate a resulting consent to search. State v. MacDonald, 390 So.2d 1276 (La.1980); State v. Bourgeois, 388 So.2d 359 (La.1980).
For these reasons, we find that valid “consent to search” was given by the party who was authorized to do so and that this consent was the product of the free will of Ms. Phillips and was not an exploitation of the previous illegality.

Conclusion

For these reasons, we find that the trial judge did not err in denying the motion to suppress. Therefore, the case is RE *1108 MANDED to the trial court for further proceedings consistent with this opinion.