570 So.2d 171 (1990)
STATE of Louisiana
v.
Melvin FOLEY.
No. 90-KA-400.
Court of Appeal of Louisiana, Fifth Circuit.
November 14, 1990.
Writ Denied March 1, 1991.
*172 Douglas A. Allen, Jr., Metairie, for appellant.
John M. Mamoulides, Dist. Atty., Twenty-Fourth Judicial District, Parish of Jefferson, Alan J. Green, and Terry M. Boudreaux, Asst. Dist. Attys., Gretna, for appellee.
Before CHEHARDY, GAUDIN and DUFRESNE, JJ.
CHEHARDY, Chief Judge.
On March 15, 1989, Melvin Foley was charged with violation of LSA-R.S. 40:967, possession of a controlled dangerous substance, to-wit: over 400 grams of cocaine. He entered a plea of not guilty at arraignment but, following denial of his motion to suppress, withdrew his former plea of not guilty and pleaded guilty as charged, reserving *173 his right to appeal the denial of his motion to suppress, in accordance with State v. Crosby, 338 So.2d 584 (La.1976). On March 12, 1990, the defendant was sentenced to fifteen years at hard labor and fined $250,000 plus court costs.
On appeal the defendant contests the constitutionality of the search by which the evidence was seized, contending the warrantless searches of his automobile and person were without probable cause, and asserts he was coerced into signing a consent form for the search of his residence.

FACTS
On the night of February 16, 1989, at approximately 10:00 p.m., Sergeant John Thevenot of the Jefferson Parish Sheriffs Office received a telephone call from Sergeant Warren Keller of the New Orleans Police Department. Sergeant Keller stated he recently had spoken to a reliable confidential informant, who indicated that a black male named Melvin Foley, residing in Apartment 131 of the West Chase Apartments at 1013 Manhattan Boulevard in Harvey, was in possession of at least two kilograms of cocaine. The informant also revealed that several black males would be visiting Foley's apartment on the late evening of February 16, 1989, where they would obtain small quantities of cocaine to sell. Sergeant Keller also explained that the informant told him Foley owned a maroon 1979 Cadillac bearing Louisiana license 335N303.
At approximately 10:30 p.m. that night, Sergeant Thevenot instructed Agent Kenneth Soutullo of the narcotics division to try to locate the car described by the informant within the West Chase Apartments complex. Agent Soutullo found the car parked near Apartment 131, which was on the third floor on the south side of the complex. Pursuant to Sergeant Thevenot's instructions, Sergeant McNally and Detective Monnerjahn began surveillance of the apartment while Agent Soutullo went back to the office to prepare a search warrant. Sergeant Thevenot contacted a Deputy Ragsdale of the JPSO, who was in charge of security for the apartment complex, and verified that Melvin Foley was paying the rent for Apartment 131, although it had been rented in the name of another person.
At approximately 1:00 a.m. Sergeant McNally observed a black male exit the rear door of Apartment 131 and depart on a motorcycle. Sergeants Thevenot and Keller stopped the man, later identified as Kevin Kelly, as he approached the intersection of Manhattan Boulevard and the Westbank Expressway. Sergeant Keller patted him down, discovering a large bulge in the front of his jacket. Sergeant Keller reached inside the suspect's jacket and removed two clear plastic bags. Each bag contained five smaller clear plastic bags, each of which contained one-quarter ounce of a white powdery substance. Sergeant Thevenot thereupon arrested Kelly, advising him of his constitutional rights, and Kelly informed Thevenot that he had just left Foley's apartment, where he was "fronted" cocaine to sell for $200 per quarter-ounce. He also stated there was more cocaine in the apartment.
Meanwhile, Sergeant McNally observed a second black male descend the stairs, carrying a large bag, and depart in a Datsun. Detective Monnerjahn and Agent Selby of the New Orleans Police Department stopped the vehicle at the Manhattan-Westbank Expressway intersection and ordered the subject, identified as Patrick Boudoin, from the car. Agent Selby then patted him down and removed fifteen small clear plastic bags, each containing one-quarter ounce of cocaine, from his crotch area. After being arrested and advised of his constitutional rights, Boudoin informed Thevenot that he had just left Foley's apartment.
Shortly after Boudoin was stopped, Sergeant McNally observed a third male (later identified as Melvin Foley) leave Apartment 131, enter the Cadillac, and proceed to the Westbank Expressway. When the Cadillac stopped for the light at the Manhattan intersection Detective Monnerjahn and Agent Selby, his weapon drawn, approached the vehicles and observed Foley place something in his pants pocket. The officers removed Foley from the vehicle *174 and observed a weapon on the back seat, whereupon the officers placed Foley's hands on the vehicle. Agent Selby patted down Foley, discovering a large bulge in his pocket, and removed therefrom ten one-quarter-ounce bags of cocaine. He then escorted Foley to the parking lot of a nearby service station where he spoke to Sergeant Thevenot.
Sergeant Thevenot informed Foley he was under arrest and advised him of his constitutional rights. Foley, who was not handcuffed, acknowledged he had given both Kelly and Boudoin cocaine and that they were to give him $200 for each quarter-ounce bag of cocaine. Sergeant Thevenot told Foley they suspected he had more cocaine inside his apartment and requested Foley give them consent to search the apartment. Foley told Thevenot that there was no cocaine but they could search his apartment. Foley again was advised of his constitutional rights, then he signed a waiver-of-rights form and a consent form allowing the officers to search his apartment.
During the search of the apartment, Foley pointed to the bedroom closet and indicated the "stuff" was in there. A search of the closet uncovered numerous quarter-ounce bags of cocaine and two kilograms of uncut cocaine. Additionally, several scales and a box of sandwich bags were found. In total, approximately six pounds of cocaine were recovered from Foley's apartment.

ASSIGNMENT OF ERROR NO. 1
In his first assignment of error, the defendant contends there was no probable cause for the warrantless search of his person and his vehicle, in that the police relied on unsubstantiated and uncorroborated hearsay information given secondhand to a policeman who did not testify, from an unreliable and unidentified confidential informant, and on evidence illegally obtained from searches of Kevin Kelly and Patrick Boudoin and subsequent illegally-procured statements from Kelly and Boudoin.
To ascertain the validity of the search of the defendant's person, it must be determined when the defendant was actually arrested and whether the arrest was based on probable cause. LSA-C.Cr.P. art. 201 provides:
"Arrest is the taking of one person into custody by another. To constitute arrest there must be an actual restraint of the person. The restraint may be imposed by force or may result from the submission of the person arrested to the custody of the one arresting him."
An arrest occurs when circumstances indicate an intent to effect an extended restraint on the liberty of the accused, rather than at the precise time an officer tells an accused he is under arrest. State v. Raheem, 464 So.2d 293 (La.1985). The question of whether a person has been taken into custody, detained, or deprived of his freedom in a significant way must be decided by an objective test. State v. Thibodeaux, 414 So.2d 366 (La.1982). Neither the defendant's subjective impression nor the formality of an official arrest will be determinative of the issue of the claimed illegal detention. Id.
In the case before us, the arrest occurred when the officers approached the Cadillac with a weapon drawn, removed the defendant from the car, and placed his hands on it. See State v. Raheem, supra. The fact that the defendant was not advised verbally of his arrest until he spoke with Sergeant Thevenot does not alter the fact of arrest. Id.
Probable cause to arrest without a warrant exists when the facts and circumstances known to the arresting officer and of which he has reasonably trustworthy information are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed a crime. State v. Raheem, supra. Probable cause must be judged by the probabilities and practical considerations of everyday life on which average men, and particularly average police officers, can be expected to act. Id.
*175 A confidential informant may provide adequate information to establish probable cause for a warrantless arrest, so long as the basis for the information and the informant's reliability, when examined under the totality of the circumstances, are established. Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Corroboration of details of an informant's tip by independent police investigation is also valuable in applying the totality of the circumstances analysis. Id.
In the case at bar, the informant's reliability was established by the fact that he had supplied information in the past that had led to arrest and seizure of cocaine, while the basis for the information was established by the fact that he had visited the defendant's apartment within the last 24 hours and had seen approximately two kilograms of cocaine there. In addition, the officers corroborated details of the tip by establishing that the defendant resided at the described apartment, that the Cadillac described by the informant was located in the parking lot of the complex, and that two black males had visited the defendant's apartment.
Further, the subsequent detention and search of the two black males revealed that they possessed cocaine which they had received from the defendant and that there was more cocaine in the defendant's apartment.
Relying on La. Const. Art. 1, Section 5, which grants standing to contest the illegality of a search or seizure to "any person adversely affected," the defendant contends he was adversely affected by the searches of Kelly and Boudoin. In State v. Culotta, 343 So.2d 977 (La.1976), however, the Louisiana Supreme Court recognized that the laudatory deterrent purpose served by the exclusionary rule did not mandate that illegally-seized evidence could not be considered in support of a finding of probable cause.
"The use of the possibly illegal evidence for consideration in support of probable cause is particularly logical when viewed in light of the purpose of the exclusionary rule. The rule should not preclude the use of evidence seized from a vehicle in which defendants had no reasonable expectation of privacy, when the evidence was used merely to corroborate other information to support a finding of probable cause. * * *"
State v. Bible, 389 So.2d 42, 45-46 (La. 1980), vacated on other grounds, Bible v. Louisiana, 453 U.S. 918, 101 S.Ct. 3153, 69 L.Ed.2d 1001 (1981).
Further, where a defendant has not been "adversely affected" by a prior illegal arrest and seizure of a third person, he does not have standing to assert the illegality. State v. Bearden, 449 So.2d 1109 (La.App. 5 Cir.1984), writ denied, 452 So.2d 179 (La.1984).
We conclude that the defendant here does not have standing to contest the illegality of the searches of Kelly and Boudoin; both the seized cocaine and the statements of Kelly and Boudoin were properly considered in evaluating whether there was probable cause to arrest the defendant. Considering the totality of the circumstances presented, there was probable cause to arrest the defendant; therefore, the searches of the defendant and his vehicle were searches incident to a lawful arrest. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).

ASSIGNMENT OF ERROR NO. 2
The defendant asserts he was coerced into signing a consent form, making the warrantless search of his residence illegal.
A search made by consent of the suspect is an exception to the requirement for a warrant, but the burden is upon the state to prove that the consent was given freely and voluntarily. This is a question of fact for the trial judge, whose determinations are given great weight upon appellate review. State v. Edwards, 434 So.2d 395 (La.1983).
The fact whether a defendant was under arrest at the time of the consent is to be considered in determining whether there was voluntary consent, but the fact of custody does not, of itself, render the consent *176 involuntary. State v. Bourgeois, 388 So.2d 359 (La.1980). Likewise, the court must consider whether the defendant was advised of his right to refuse consent or was coerced into acquiescing. Id.
Here, Sergeant Thevenot testified that the defendant consented to a search of his apartment after indicating that there was no cocaine and, in addition, the defendant signed a consent search form. He testified further that the defendant was not coerced, threatened, or intimidated in any way and that the defendant's only concern was to be assured that nothing would be damaged inside the apartment.
Agent Soutullo, who witnessed the signing of the consent search form, testified that he read the consent search form to the defendant and allowed him to read it. He also confirmed that the defendant was not coerced, threatened, or intimidated into signing the form.
Agent Selby testified that he did not observe any coercion, pressure or intimidation of the defendant before he agreed to sign the form.
The defendant, on the other hand, testified that Sergeant Thevenot approached him while he was handcuffed and said, "You may not ever see a jail cell if you act stupid," then Thevenot removed the handcuffs and told him, "You can do whatever it is that you want." Sergeant Thevenot presented the consent form to the defendant and asked him to sign it, then informed him that the officers could make him sign or they could wait for a search warrant. He stated that he didn't want anything to happen to him and the sergeant responded, "Well, sign the papers."
The defendant further claimed that, after he signed the form, Agent Selby threatened him while they were alone. He stated it was after Selby's threat at his apartment that he revealed the location of the cocaine. He testified that when he signed the consent form he was upset, nervous and in fear for his safety, and that without the threats he would not have signed the form.
However, considering that the defendant knew the officers had knowledge his apartment contained cocaine, so that discovery of the cocaine was just a matter of time until the search warrant would be obtained, the defendant easily could have concluded from all the circumstances that it was in his best interest to cooperate. See State v. Bourgeois, supra.
Where there is contradictory testimony, the trial judge's evaluations of credibility are entitled to great weight. State v. Mac-Donald, 390 So.2d 1276 (La.1980). The trial judge here obviously believed the testimony of the officers over that of the defendant and we find no basis to disturb his credibility ruling.
Finally, the defendant contends the consent to search was the exploitation of an illegal detention. We find no merit to this argument, considering our prior conclusion that the detention of the defendant was lawful.
For the foregoing reasons, the conviction is affirmed.
AFFIRMED.