668 So.2d 1240 (1996)
STATE of Louisiana
v.
Waldo SHORT.
No. 95-KA-742.
Court of Appeal of Louisiana, Fifth Circuit.
January 30, 1996.
*1241 John M. Mamoulides, Terry M. Boudreaux, Robert Grant, District Attorney's Office, Gretna, for Plaintiff/Appellee, State of Louisiana.
Bruce G. Whittaker, Indigent Defender Board, Gretna, for Defendant/Appellant, Waldo Short.
Before BOWES, GRISBAUM and DUFRESNE, JJ.
BOWES, Judge.
Defendant, Waldo Short, appeals his conviction for possession with intent to distribute heroin. We affirm.
Defendant was indicted and charged with possession with intent to distribute heroin under La.R.S. 40:966A. At his arraignment, defendant pled not guilty.
On May 5, 1995, the court conducted a hearing on defendant's motion to suppress evidence and an inculpatory statement. After listening to the testimony of the police officers, the trial judge denied the motion to suppress.
The matter proceeded to trial before a twelve person jury on June 27 and 28, 1995 who unanimously found defendant guilty as charged.
On the date set for sentencing, the trial judge considered and denied defendant's motion for post-verdict judgment of acquittal, motion for new trial, and motion to modify jury verdict and render a judgment of conviction to a lesser included responsive offense. Following these denials, defendant waived sentencing delays. The judge then sentenced him to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. Defendant appeals.

ASSIGNMENT OF ERROR NUMBER ONE

MOTION TO SUPPRESS
Defendant urges that the trial court erred in denying his motion to suppress the (drug *1242 and weapon) evidence and inculpatory statement, which were introduced at trial. Specifically, defendant argues that the actions of the officers in initially stopping him at the hotel room constituted an arrest, and not merely an investigative detention. Defendant further argues that this arrest was without probable cause and, therefore, the evidence seized pursuant to that arrest, and appellant's subsequent confession, should have been suppressed as the product of an illegal arrest and search.
At the suppression hearing, Lieutenant Raymond Gibbs and Agent O.J. Orgeron testified regarding the facts and circumstances leading to defendant's arrest on October 27, 1994. The officers testified that they received information from a reliable confidential informant that defendant and a lady by the name of Dana Ronquille were presently residing at the Bon Soir Motel, Room 53, in Westwego, Louisiana, and that they were trafficking heroin out of that motel room. In addition, the confidential informant told the officers that after people would visit the room, defendant would usually make a trip to New Orleans to pick up the heroin. The informant also said that defendant was carrying a weapon which he thought was a .38 caliber pistol.
With regard to the reliability of this confidential informant, the officers testified that they are familiar with the informant and that he has proven to be reliable in the past by giving information resulting in drug arrests, drug seizures, and convictions. Lieutenant Gibbs further testified that they had received information in the past about the defendant, and that there was an on-going investigation involving Waldo Short trafficking in heroin.
After receiving this information, the officers went to the Bon Soir Motel and initiated surveillance on Room 53 at approximately 8:20 p.m. on October 27, 1994. Shortly thereafter, they noticed a white male subject go to Room 53 and knock on the door. A woman, whom the officers recognized as Dana Ronquille, exited the room and met with this individual. After a brief conversation, the subject left, and Dana Ronquille went back into the room.
A few minutes later, the officers observed defendant and another white male exit Room 53 and enter a small vehicle. Officers Gibbs, Greenwood and Tran, in three separate vehicles, began a moving surveillance of this vehicle and observed that it was traveling eastbound on the elevated portion of the Westbank Expressway, appearing to be headed towards New Orleans. The officers then observed the vehicle, which was proceeding in a very cautious manner, exit the elevated expressway and travel in erratic directions. Specifically, the vehicle made several U-turns, pulled onto the side of the road, went into a neighborhood in Gretna, but eventually returned to the elevated expressway going towards New Orleans. The officers terminated the moving surveillance because they felt that the subjects knew they were being followed and they did not want to jeopardize their investigation. Moreover, they did not want to travel into Orleans Parish at that time.
After they discontinued the moving surveillance, the officers returned to the Bon Soir Motel and re-established surveillance on Room 53 to see if defendant returned. At approximately 10:00 p.m., defendant and the other white male, who had left with him, arrived at the motel and parked away from the room, on the opposite side of the motel from where they were originally parked.
Lieutenant Gibbs testified that, based on the information received from the informant, as well as the activities the officers observed during their surveillance, he believed that defendant had purchased heroin in New Orleans and was returning with it. Accordingly, as defendant and the white male walked towards the room, Officers Orgeron and Gibbs decided to approach and investigate. The officers, who were in their police raid jackets (which had "Police" written on the back and the sheriff's office insignia on the front), identified themselves as police officers, and asked the two subjects to put their hands on the wall of the motel. In addition, Officer Orgeron advised the subjects of their rights and told them that they were under investigation.
At this point, Officer Gibbs asked defendant to let go of a plastic Kentucky Fried *1243 Chicken bag that he had clutched in his hand, fearing that it might contain a weapon. The defendant refused; however, when the officer insisted, defendant took his right hand off the wall and let the bag go. In this same motion, defendant tossed a clear plastic bag to the ground that contained some tin foil packets.
Officer Gibbs then conducted a pat down search of defendant, and in his right front coat pocket, he felt what he thought was a gun. The officer retrieved the gun which turned out to be a .38 caliber revolver and then continued the pat down search. In defendant's same right coat pocket, the officer discovered what he suspected to be cocaine. Defendant was subsequently advised of his rights and placed under arrest. Officer Orgeron thereafter conducted a field test on the packet that defendant threw to the ground and on the substance found in defendant's pocket. Both tests proved positive for the presence of cocaine.
Defendant was subsequently transported to the investigation bureau. Then, claiming that the narcotics belonged to Ms. Ronquille, defendant agreed to give a statement. The officer again advised defendant of his rights and defendant executed a waiver of rights form at that time. The officer read and explained the form to defendant and defendant indicated that he understood the form and wished to give a statement. In this statement, he admitted that he had in his possession some cocaine and heroin. According to defendant, he went across the river and bought the bundle of heroin for $375.00 from a dealer in Orleans Parish. Defendant claimed that he agreed to get the heroin for Dana in exchange for $50.00 and three bags. He also claimed that he never sold heroin, but would go get the drugs for other people in order to support his own habit.
According to the officers, no one made any threats or promises to defendant in order to get him to give a statement, nor did anyone use coercion or undue influence.
After the state presented the testimony of these two officers, defense counsel called Officer Greenwood as a witness to testify regarding his participation in the surveillance and subsequent arrest of defendant. He testified that during the moving surveillance, the vehicle in which defendant was a passenger, was proceeding very cautiously, driving below the speed limit and made several U-turns, basically going in circles. Agent Greenwood also testified that when they returned to the motel, he was positioned on the west side waiting for the vehicle to return, and that when he arrived on the scene of the stop, defendant's hands were against the wall. Greenwood observed a fried chicken bag on the ground when he arrived; however, he did not see anything else on the ground that might have been retrieved.
On cross-examination, he testified that he arrived at the scene of the stop a short time after Officers Orgeron and Gibbs had effected the stop.
After considering the testimony of the witnesses, the trial judge denied defendant's motion to suppress, stating in part as follows:
Cautious actions can be taken as cautious actions in reasonably good drivers or under certain circumstances could be cause for suspicion. The entrance upon the overhead expressway, the getting off the overhead expressway, the U-turns, the stopping, the more U-turns. I can't recall the number of turns and turns arounds that we talked about. At one time it seemed like a minimum of two; the other time I heard like four or five possible turns and returns. That could be suspicious.
I believe all of these actions, especially tied in with the information that the agents had from the confidential informant fit in perfectly with the described M.O., that there was a reasonable suspicion of the commission of a crime, that they had a right to stop and make an investigative stop of the defendant and Mr. Ayars (the other male with defendant), and at the time they did so had a right to ask him to release what was in his hand out of reasonable suspicion not only of narcotics but the possibility of a weapon for their own safety, and then the toss of the narcotics lead to the grounds for an absolute immediate arrest and the further searches.
The right of law enforcement officers to stop and interrogate one reasonably suspected *1244 of criminal activity is recognized by La. C.Cr.P. art. 215.1,[1] as well as both state and federal jurisprudence. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Pautard, 485 So.2d 909 (La.1986); State v. Barnes, 592 So.2d 1352 (La.App. 5 Cir.1991).
Reasonable cause for an investigatory stop is something less than probable cause and must be determined under the facts of each case by whether the officer had sufficient knowledge of facts and circumstances to justify an infringement on the individual's right to be free from governmental interference. State v. Barnes, supra.
In U.S. v. Sokolow, 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989), the United States Supreme Court elaborated on the Terry type investigatory stop and the standard to be used in establishing the existence of reasonable suspicion. In State v. Davis, 547 So.2d 1367, 1375 (La.App. 5 Cir.1989), writ denied, 556 So.2d 53 (La.1990), this Court discussed Sokolow, stating as follows:
A fair reading of the Sokolow opinion indicates that the specific and articulable facts to which a law enforcement officer must be able to point in justifying an investigatory stop are to be evaluated in light of all circumstances surrounding the particular incident. A court's inquiry into the existence of reasonable suspicion should entail practical consideration of the cumulative effect of all facts articulated by the officer, further taking into account the probative value of such facts to the trained law enforcement official observing them. Any attempt to refine this "totality of the circumstances" standard for reasonable suspicion is invalid.
In State v. Mingo, 93-0827 (La.App. 1st Cir. 6/24/94), 638 So.2d 1209, the appellate court there recognized that an informant's tip can provide the necessary reasonable cause to support an investigatory stop. The court stated at pp. 1211-1212 as follows:
An informant's tip can provide a police officer with reasonable cause to support a Terry stop. To determine whether the information furnished by a confidential informant provides probable cause for an arrest or search, a court must utilize a `totality of the circumstances analysis' and consider, among other things, the informant's veracity, facts relating to the informant's basis of knowledge and corroboration of the informant's information. While an informant's past record for accuracy and reliability is one factor to take into account in determining the reliability of the tip in question, this alone will not always support a finding of probable cause. Corroboration of details of an informant's tip by independent police investigation is valuable in applying a totality of the circumstances standard to these type cases. (Citations omitted).
While an investigatory stop pursuant to La.C.Cr.P. art. 215.1 can be based on "reasonable suspicion," in order for an arrest to be valid, it must be based on "probable cause." State v. Raheem, 464 So.2d 293 (La. 1985). An arrest occurs when the circumstances indicate an intent to effect an extended restraint on the liberty of the accused, rather than at the precise time an officer tells an accused he is under arrest. See La.C.Cr.P. art. 201; State v. Raheem, supra; State v. Foley, 570 So.2d 171 (La.App. 5 Cir.1990), writ denied, 576 So.2d 27 (La. 1991).
The question of whether a person has been taken into custody, detained, or deprived of his freedom in a significant way must be decided by an objective test. Neither the defendant's subjective impression *1245 nor the formality of an official arrest will be determinative of the issue of the claimed illegal detention. State v. Foley, supra.
Probable cause to arrest without a warrant exists when the facts and circumstances known to the arresting officer and, of which he has reasonably trustworthy information, are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed a crime. State v. Raheem, supra. Probable cause must be judged by the probabilities and practical considerations of everyday life on which average men, and particularly average police officers, can be expected to act. State v. Raheem, supra.
In the present case, the officers initially approached defendant with the intent of conducting an investigatory stop pursuant to La.C.Cr.P. art 215.1. At the time of the stop, the officers had specific information from a reliable confidential informant that defendant and a lady by the name of Dana Ronquille were trafficking heroin out of Room 53 at the Bon Soir Motel in Westwego. The officers then verified the information given to them by conducting surveillance of the motel room, as well as the vehicle in which defendant was a passenger. Based on the facts as set forth, supra, the officers clearly had reasonable suspicion to make an investigatory stop of defendant and to suspect that he was armed with a weapon. See e.g. State v. Thomas, 583 So.2d 895 (La.App. 1 Cir.1991).
As part of this valid investigatory stop, the officers were authorized to frisk defendant for weapons, which justified their actions in ordering the two individuals to place their hands against the wall. See State v. Edwards, 630 So.2d 302, 304 (La.App. 5 Cir.1993), wherein this Court stated as follows:
Additionally a limited frisk or pat-down weapons search incident to an investigatory stop may be conducted in order to prevent harm to the police officers and ensure their safety. The circumstances under which an officer may make such a pat-down for weapons must be based on whether or not a reasonably prudent man would be warranted in the belief that his safety or that of others was in danger. Such belief is not reasonable unless the officer is able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous. It is not necessary that the investigating officer establish that it was more probable than not that the detained individual was armed and dangerous; it is sufficient that he establish a substantial possibility of danger. (Citations omitted)
Here, the officers effected a valid investigatory stop, based on reasonable suspicion; based on previous experience, as well as the informant's tip, they had reason to believe that defendant might be armed and dangerous. Therefore, they were justified in asking the defendant to drop the bag that he had in his hand in order for them to check it for weapons.
At that same time he dropped the chicken bag, defendant also dropped a clear plastic bag which contained twenty-five foil packets. If property is abandoned without any prior unlawful intrusion into a person's right to be free from governmental interference, that property may be lawfully seized. In such cases there is no expectation of privacy and thus no violation of the person's custodial rights. Only when the person is actually stopped without reasonable cause or when a stop without reasonable cause is imminent, is the right to be left alone violated, thereby rendering unlawful any resultant seizure of abandoned property. State v. Belton, 441 So.2d 1195 (La.1983), cert denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984); State v. Massey, 529 So.2d 139 (La. App. 4 Cir.1988).
As pointed out above, we have found that the officers had reasonable suspicion when they stopped defendant; therefore, the property that he abandoned (drug packets) was legally seized. At the time the officer saw the foil packets, his reasonable suspicion to stop and investigate ripened into probable cause to arrest. Once a lawful arrest has been made, a warrantless search of the arrestee's person and of the area within his immediate control is permissible to remove *1246 any weapons from the defendant and to prevent evidence from being destroyed. State v. Davis, 558 So.2d 1379 (La.App. 5 Cir.1990).
Therefore, we hold that the gun and additional narcotics that were seized from defendant's person were seized pursuant to a valid arrest based on probable cause.
In summary, the officers had reasonable suspicion to initially stop defendant. During the course of a valid investigatory stop, defendant abandoned the heroin which immediately gave the officers probable cause to arrest. The remaining evidence taken from defendant's person was seized as incidental to a lawful arrest. Since defendant's arrest was based on probable cause, it cannot be said that his subsequent confession was the result of an illegal arrest. Therefore, the trial judge properly denied defendant's motion to suppress. This assignment of error is without merit.

PATENT ERROR DISCUSSION
We have examined the record for patent error in accordance with State v. Oliveaux, 312 So.2d 337 (La.1975) and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990).
In his request for an error patent review, defendant notes that the trial court erroneously denied him parole eligibility. Defendant was convicted of possession with intent to distribute heroin, La.R.S. 40:966A. The penalty provision for that offense is contained in La.R.S. 40:966B(1) which provides as follows:
B. Penalties for violation of Subsection A. Any person who violates Subsection A with respect to:
(1) A substance classified in Schedule I which is a narcotic drug (all substances in Schedule I preceded by an asterisk "*"), upon conviction shall be sentenced to life imprisonment at hard labor without benefit of probation, or suspension of sentence, and may, in addition, be required to pay a fine of not more than fifty thousand dollars.
The statute does not deny parole eligibility. Accordingly, it is necessary that the sentence be amended to delete that portion which denies him parole eligibility, and to order correction of the commitment form. La.C.Cr.P. art. 882.
We note further that the transcript does not reflect that defendant was given credit for time served pursuant to La.C.Cr.P. art. 880. However, we find that this omission is of no consequence since the hard labor sentencing form which must be executed by the court reflects credit for time served.
Finally, the trial judge failed to advise defendant of the prescriptive period for post-conviction relief as mandated by La. C.Cr.P. art. 930.8C. However, failure to inform defendant does not constitute grounds for reversing the sentence or remanding the case for resentencing. La.C.Cr.P. art. 921. The appropriate remedy is to instruct the trial court to inform defendant of the provisions of art. 930.8, by sending appropriate written notice to defendant within ten days of the rendition of this opinion and to file written proof that defendant received the notice in the record of the proceedings. State v. Kershaw, 94-141 (La.App. 5th Cir. 9/14/94), 643 So.2d 1289.

DECREE
Accordingly the conviction is affirmed. The sentence is amended to delete the word "parole" from the restriction that defendant serve his sentence without benefit of probation, parole or suspension of sentence. The case is remanded to the district court for correction of the sentencing minutes and order of commitment as discussed hereinabove; the trial court is further directed to inform defendant of the provisions of La.C.Cr.P. art. 930.8 by sending appropriate written notice to defendant within ten days of the rendition of this opinion and to file written proof in the record that defendant received the notice.
AFFIRMED AS AMENDED; REMANDED WITH INSTRUCTIONS.
NOTES
[1] La.C.Cr.P. art. 215.1 reads as follows:

A. A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
B. When a law enforcement officer has stopped a person for questioning pursuant to this Article and reasonably suspects that he is in danger, he may frisk the outer clothing of such person for a dangerous weapon. If the law enforcement officer reasonably suspects the person possesses a dangerous weapon, he may search the person.
C. If the law enforcement officer finds a dangerous weapon, he may take and keep it until the completion of the questioning, at which time he shall either return it, if lawfully possessed, or arrest such person.