380 So.2d 32 (1980)
STATE of Louisiana
v.
Sidney JOHNSON.
No. 65261.
Supreme Court of Louisiana.
January 28, 1980.
Rehearing Denied March 3, 1980.
John Barkley Knight, Jr., Winnsboro, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Lowen B. Loftin, Dist. Atty., E. Rudolph McIntyre, Jr., Asst. Dist. Atty., for plaintiff-appellee.
*33 MARCUS, Justice.
Sidney Johnson was indicted by the grand jury for first degree murder in violation of La.R.S. 14:30. After trial by jury, he was found guilty as charged. After a sentencing hearing conducted before the same jury that determined the issue of guilt, the jury unanimously recommended that defendant be sentenced to life imprisonment without benefit of probation, parole or suspension of sentence. On appeal, defendant relies on two assignments of error for reversal of his conviction and sentence.

ASSIGNMENT OF ERROR NO. 1
Defendant contends the trial court erred in overruling his objection to the introduction into evidence of an inculpatory statement made by him to Officer Joe Powell at the time of his arrest on the ground that the state did not inform him of the statement in its answer to his motion for discovery and in refusing to order a mistrial on the same ground.
On March 14, 1979, defendant filed a motion requesting the court to order the district attorney to inform him of the substance of any oral statement which the state intended to offer in evidence made by defendant in response to interrogation by a law enforcement officer. The state responded on March 19, 1979, that it had no knowledge of any such statement. On Friday, March 30, 1979, the assistant district attorney learned for the first time that defendant had disclosed the location of the shotgun allegedly used to commit the murder in question to Officer Joe Powell at the time of his arrest. A notice of the state's intention to offer the statement in evidence, containing the substance of the statement, was placed in defense counsel's box in the parish clerk's office that same day, though the notice was not received by defense counsel until Monday, April 2, 1979, the day on which defendant's trial had been set. However, trial did not commence until Wednesday, April 4, 1979. Defendant did not move for a continuance.
La.Code Crim.P. art. 716(C) provides:
Upon motion of the defendant, the court shall order the district attorney to inform the defendant of the substance of any oral statement which the state intends to offer in evidence made by the defendant, whether before or after arrest, in response to interrogation by any person then known to the defendant to be a law enforcement officer.
La.Code Crim.P. art. 729.3 provides for a continuing duty to disclose:
If, subsequent to compliance with an order issued pursuant to this Chapter and prior to or during trial, a party discovers additional evidence or decides to use additional evidence and such evidence is or may be, subject to discovery or inspection under the order issued, he shall promptly notify the other party and the court of the existence of the additional evidence, so that the court may modify its previous order or allow the other party to make an appropriate motion for additional discovery or inspection.
La.Code Crim.P. art. 729.5(A) provides sanctions for a failure to comply with the discovery articles:
If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this Chapter or with an order issued pursuant to this Chapter, the court may order such party to permit the discovery or inspection, grant a continuance, order a mistrial on motion of the defendant, prohibit the party from introducing into evidence the subject matter not disclosed, or enter such other order, other than dismissal, as may be appropriate.
We are satisfied that the assistant district attorney was in good faith and had no knowledge of the statement prior to Friday, March 30, 1979. Disclosure of the statement was made that same day and, though defendant did not actually receive it until Monday, April 2, defendant had actual notice two days before commencement of the trial. Moreover, defendant did not seek a continuance as a result of not receiving notice of the statement earlier. Under the *34 circumstances, we find that the state substantially complied with La.Code Crim.P. arts. 716(C) and 729.3. Hence, the trial judge did not abuse his discretion in overruling defendant's objection to the introduction of the statement in evidence or in failing to order a mistrial.
Assignment of Error No. 1 is without merit.

ASSIGNMENT OF ERROR NO. 2
Defendant contends the trial court erred in overruling his objection to the introduction into evidence of a shotgun because it was seized as a result of an illegal search and in denying his motion for a mistrial on the same ground.
The record reveals that on the morning of October 14, 1978, defendant was involved in an altercation with Joe McCarthy, Sr. at the Silver Spoon Cafe in Winnsboro, Louisiana. Defendant left the cafe but returned with a shotgun in the early morning hours of October 15, 1978, and shot McCarthy three times, killing him. Police officer Joe Powell and other officers investigating the incident arrived at the cafe and found three red 12 gauge shotgun shells on the floor near the victim. After questioning witnesses, the officers set out to find defendant.
The officers drove to a house being rented by Luretha Swiney, the woman with whom defendant had been living. Several persons were inside the house when Officer Powell knocked on the front door, identified himself and asked if defendant was there. When informed that defendant was inside, Officer Powell leaped off the small front porch into the yard. Defendant emerged from the house through the front door and Officer Powell advised him that he was under arrest for the murder of Joe McCarthy, Sr. Officer Powell handcuffed defendant and read him his Miranda rights; defendant stated that he understood his rights. Officer Powell then asked defendant where the shotgun was located and defendant replied that it was inside the house "under the mattress."
Officer Powell entered the house and, as he stepped into the bedroom, Bobby Williams, one of the persons present inside the house, had turned up the mattress, exposing the shotgun. As Williams removed the gun and attempted to pass it to him, Officer Powell grabbed the shotgun from Williams' hands. The shotgun was introduced into evidence as the weapon used to commit the murder of Joe McCarthy, Sr.
Unreasonable searches and seizures are prohibited by the fourth amendment to the federal constitution and by section 5 of article 1 of our state constitution. It is well settled under the fourth and fourteenth amendments that a search conducted without a warrant issued upon probable cause is "per se unreasonable... subject only to a few specifically established and well-delineated exceptions." Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973); Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). It is equally well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent. Schneckloth v. Bustamonte, supra. Hence, a search conducted pursuant to a valid consent is constitutionally permissible. Moreover, when the state seeks to rely upon consent to justify the lawfulness of a search, it has the burden of proving that the consent was, in fact, freely and voluntarily given. Schneckloth v. Bustamonte, supra; Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968). It is only by analyzing all the circumstances of an individual consent that it can be ascertained whether in fact it was voluntary or coerced. Therefore, the validity of the consent is determined by the facts and circumstances of each case. Schneckloth v. Bustamonte, supra.
In the instant case, defendant disclosed the location of the shotgun to the officers after he was read his Miranda rights and after stating he understood those rights. By telling the officers the shotgun was "in the house under the mattress," defendant directed Officer Powell to the very spot *35 where the shotgun was concealed. Thus, the seizure was the result of information volunteered by defendant after having been advised that he had a right to remain silent. In effect, defendant consented to a limited search in the house under the mattress for the shotgun. Upon being directed to the mattress in the house, Officer Powell walked inside and stepped into the bedroom to find Bobby Williams, one of the occupants of the house, lifting up the mattress revealing the shotgun. It is apparent that defendant's disclosure of the shotgun's location was intended as a consent to search because Bobby Williams overheard the statement, interpreted it as a directive to give Officer Powell the shotgun, and proceeded to do just that. Moreover, Officer Powell merely removed the shotgun from Williams' possession once it was revealed to him.
That defendant was under arrest is indeed a factor to consider in determining whether defendant voluntarily consented to the search. The question is whether the officers used coercive tactics or took unlawful advantage of the arrest situation to obtain consent. United States v. Jones, 475 F.2d 723 (5th Cir.), cert. denied, 414 U.S. 841, 94 S.Ct. 96, 38 L.Ed.2d 77 (1973). As in Jones, a factor which weighs in favor of finding a voluntary consent is that defendant was given his Miranda warnings prior to the time his statement was made. No coercive tactics or unlawful advantage whatsoever took place; Officer Powell testified that he merely asked defendant where the shotgun was located.
A similar situation existed in United States v. Candella, 469 F.2d 173 (2d Cir. 1972), in which the defendant was arrested at his home for illegal transportation of firearms, was given his Miranda rights and asked whether he had any of the firearms he was accused of purchasing. Defendant stated, "[s]ome of them are there," pointing to a carton about five feet from where he was standing; he also indicated that other weapons were in a desk located in the same room. The court found defendant had voluntarily consented to the search by directing the officers' attention to the very spots where the guns were located.
Under the facts and circumstances of this case, we are unable to say that the trial court erred in determining that defendant voluntarily consented to the search under the mattress in the residence for the shotgun. The officer's search did not exceed the bounds of the consent given when he seized the shotgun from Williams. Since the search was conducted pursuant to a valid consent, it was constitutionally permissible. Hence, the trial court did not err in overruling defendant's objection to the introduction of the shotgun in evidence and in denying his motion for a mistrial.

DECREE
For the reasons assigned, the conviction and sentence are affirmed.