SUSAN M. CHEHARDY, Chief Judge.
laOn appeal, defendant. challenges his convictions and sentences for second degree murder, attempted second degree murder, and attempted armed robbery. For the following reasons, we affirm.

Procedural History

On February 17, 2011, the Jefferson Parish Grand Jury returned a three-count indictment against defendant as follows: one count of second degree murder, in violation of La. R.S. 14:30.1; one count of attempted second degree murder, in violation of La. R.S. 14:27:30.1; and one count of armed robbery, in violation of La. R.S. 14:64.
*550 On March 25, 2014, trial of defendant on these charges commenced. After four days of testimony and evidence, the twelve-person jury, on March 29, 2014, found defendant guilty as charged of second degree murder and attempted second degree murder, and guilty of the responsive verdict of attempted armed robbery. On May 2, 2014, defendant filed a Motion for New Trial on the grounds that “the ends of justice would be served by the granting of a new trial,” which the trial judge denied after a hearing on May 5, 2014.
1¡¡That same day, after defendant waived sentencing delays, the trial judge imposed concurrent sentences on defendant as follows: for second degree murder, to “the custody of the Department of Corrections[1] ... for life without benefit of probation, parole, or suspension of sentence;” for attempted second degree murder, to twenty-five years at hard labor without benefit of probation, parole, or suspension of sentence; and, for attempted armed robbery, to fifteen years at hard labor without the benefit of probation, parole, or suspension of sentence. That day, defendant moved to appeal his convictions and sentences.

Facts

On the evening of Thursday, October 28, 2010, Walter Bailey drove to visit his soon-to-be brother-in-law,[2] Wiley Payton, at Payton’s residence on Vouray Drive in Kenner, Louisiana. After Bailey arrived, Payton joined Bailey in his truck and the two men chatted. As the two men sat in Bailey’s truck on the street in front of Payton’s apartment, two armed men converged on the vehicle from the rear. Pay-ton, who was sitting in the passenger seat, first noticed an armed man about six feet tall with a dark complexion, on Bailey’s side of the truck, pointing a gun at Bailey through the vehicle’s open window.
When Payton turned to look out his window, he saw a second man, who he described as a black male in his 20’s with medium complexion and spiked dreadlocks or “twists” in his hair, pointing a gun at him. The young man said, “Give it up,” and Payton opened his door and handed the man $10.00 that he’d just borrowed from. Bailey. Almost immediately, Payton saw Bailey “break and run” |4so he, too, attempted to run away. As he tried to run to his apartment, Payton was shot in the thigh; the bullet broke Payton’s femur and caused damage to his hip.
Unfortunately, as Bailey tried to get to safety, he was shot four times in the back and two times in the hip. Two of the six perforating gunshot wounds pierced his lungs and his aorta and caused Mr. Bailey’s death that night.
At 10:58 p.m., the first 9-1-1 call reporting gunfire on Vouray was logged. Ken-ner Police Department responded and interviewed witnesses, who reported that “two or three black males ran east on Vouray towards Macon” immediately after the gunfire. Another witness saw an older, dark blue, Toyota Camry without its headlights on flee “northbound on Macon” right after the shootings. ‘
That night, crime scene technicians recovered two .40-caliber-class spent casings from the deceased victim’s vehicle.[3] Fur *551 ther, during the autopsy of Walter Bailey,[4] one .38-caliber-class projectile was recovered. These findings led the investigators to surmise that at least two weapons were used during this crime.
On October 29, 2010, within hours of the shootings, Kenner Police Detectives showed Payton three photographic lineups to try to develop a suspect but Payton stated that his assailant was not pictured. That same day, seven fingerprint slides were obtained from Bailey’s truck.[5] Subsequently, two expert latent fingerprint examiners verified that one fingerprint obtained from the exterior of the rear passenger door matched the left index fingerprint of Joseph Humbles.
Meanwhile, Kenner Police Detective Jesse Johnson, who responded to the crime scene and spoke to witnesses, accessed Kenner’s automobile license plate recognition system to search for an older, dark blue Toyota Camry that was | ^traveling in the area on the night in question. During his search, Detective Johnson found a 1990 Toyota Camry traveling west on Vintage at Williams Boulevard at 10:31 p.m., which was before the crimes, then, after the crimes at 11:08 p.m., traveling south on Loyola Drive at Veterans Boulevard. Detective Johnson researched and learned that the registered owner of that Camry was Joseph Humbles.
On November 2, 2010, Payton was shown a fourth photographic lineup with Joseph Humbles pictured and Payton identified Humbles, defendant-herein, as his assailant. Payton was not able to identify the person that approached Bailey.
Later, on November 2, 2010, after defendant was advised of and waived his rights, he gave a statement to Sergeant Michael Cunningham of the Kenner Police Department. In his statement, defendant admitted that he and his brother had been driving in Kenner that evening. He even admitted that he had driven down Vouray that night but denied that he had stopped his vehicle. Defendant claimed that he drove down Vouray to bring his brother to his brother’s house to get clothes for that night. He also stated that he had been at Taco Bell on Loyola Drive that night.
Finally, at trial, FBI Agent Charles Williams, who was accepted as an expert in historical cell site analysis, testified regarding the location of defendant’s cellular telephone on the evening of October 28, 2010 for the time between 10:45 p.m. until 11:04 p.m. According to information gained from defendant’s cellular telephone service provider, at 10:45 p.m., defendant’s cell phone was within calling range of a cell tower located northwest of the intersection of Williams Boulevard and Joe Yenni Boulevard. At 10:46 p.m., defendant’s cell phone was within range of the tower transmitting south on West Esplanade Avenue at Loyola Drive. At 10:58 p.m., the first 9-1-1 call, which came from a witness’s cell phone, was logged from a tower north of Vintage between Williams Boulevard and East |liLoyola. Finally, at 11:04 p.m., defendant’s cell phone was northeast and within range of a tower located at Power Boulevard and 1-10. The jury was shown a map of Kenner with these locations highlighted.
*552 At trial, defendant, and his twin brother, Joshua, testified that they did not have any involvement in this or any other shooting. After hearing four days of testimony and evidence, the jury found, in an 11-1 vote, that defendant was guilty as charged of second degree murder for the death of Walter Bailey and of the attempted second degree murder of Wiley Payton. Further, the jury found, in an 11-1 vote, that defendant was guilty of the responsive verdict of attempted armed robbery of Wiley Payton. This appeal follows.

Law and Argument

On appeal, defendant raises three assignments of error: first, the trial court erred in denying the motion for mistrial; second, the trial court erred in failing to hold the State accountable for discovery violations regarding the fingerprint evidence; and third, the trial court erred in denying the motion for new trial and failing to allow the defense to support their motion with testimony from the surviving witness in this case.
When the issues on appeal relate to both sufficiency of the evidence and one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. State v. Hearold, 603 So.2d 731, 734 (La.1992). In an abundance of caution, defendant’s third assignment of error will be addressed first.
In this assignment, defendant specifically contends that the trial court erred in denying the motion for new trial and failing to allow the defense to support their motion with testimony from the surviving witness in this case. After trial, defendant filed a motion for new trial on the grounds that “the ends of justice would be served” because the surviving witness, Wiley Pay-ton, was not asked to |7identify defendant at trial. Defendant argues that, because of this failure, the evidence presented at trial was insufficient to support the requisite element of identity in this case.
The State responds that defendant’s assertion that the surviving victim did not identify defendant at trial was known to defendant at trial yet not raised by the defense. The State also argues that the surviving victim’s identification of defendant as the perpetrator in a photographic lineup and the discovery of defendant’s fingerprint on the victim’s vehicle was sufficient evidence to prove defendant’s identity as the perpetrator.
La.C.Cr.P. art. 851 sets for the grounds for a new trial, as follows:
The motion for new trial is based on the supposition that an injustice has been done to the defendant, and unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
The court, on motion of the defendant, shall grant a new trial whenever:
[[Image here]]
(5) The court is of the opinion that the ends of justice would be served by the granting of a new trial, although the defendant may not be entitled to a new trial as a matter of strict legal right.
La.C.Cr.P. art. 858 reads, “Neither the appellate nor supervisory jurisdiction of the supreme court may be invoked to review the granting or the refusal to grant a new trial, except for error of law.” The grant or denial of a motion for new trial pursuant to La.C.Cr.P. art. 851(5) presents a question of law, which should not be disturbed on review unless the trial court abused its great discretion. State v. Guil-lory, 10-1231 (La.10/08/10), 45 So.3d 612, 613-615.
In this case, the surviving victim, Wiley Payton, identified defendant as his assailant in a photographic lineup three days after the shooting. At trial, although Pay- *553 ton repeated his identification of defendant using the photographic lineup, he was not asked to point out defendant at trial. The defense attorneys were present lRfor trial and cross-examined Payton but did not raise the issue that Payton was not asked to point out defendant at trial. After trial, defendant filed his motion for new trial stating only that “the ends of justice” warranted a new trial without adding any specific allegations.
At the hearing on the motion for new trial, defendant asked to present testimony from the surviving victim, Wiley Payton, which was denied. The trial judge ruled that the defense had the opportunity to cross-examine Payton at trial and should have raised any issues with his identification of defendant at trial. Now, defendant challenges the trial court’s denial of his motion for new trial.
“In the absence of any showing before the trial court that the rights of the accused had been jeopardized, and that the alleged injustice could be rectified at another trial, the court [would be] warranted in its refusal to set aside the verdict.” State v. McKinnies, 13-1412 (La.10/15/14), — So.3d -. Here, defendant failed to make a showing through specific allegations raised in the trial court that his rights were jeopardized. Upon review, we find no abuse of the trial court’s great discretion in denying defendant’s motion for new trial.
Moreover, even if we were to review the sufficiency of the evidence regarding defendant’s identity as the perpetrator, we find no reversible error. The constitutional standard for evaluating the sufficiency of the evidence, as enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See State v. Ortiz, 96-1609 (La.10/21/97), 701 So.2d 922, 930, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998). A reviewing court is required to consider the whole record and determine whether a | ¡¡rational trier of fact could have found defendant guilty beyond a reasonable doubt. State v. Price, 00-1883 (La.App. 5 Cir. 7/30/01), 792 So.2d 180,184.
In addition to proving the statutory elements of the charged offense at trial the State is required to prove defendant’s identity as the perpetrator. State v. Draughn, 05-1825 (La.1/17/07), 950 So.2d 583, 593, cert. denied, 552 U.S. 1012, 128 S.Ct. 537, 169 L.Ed.2d 377 (2007); State v. Ingram, 04-551 (La.App. 5 Cir. 10/26/04), 888 So.2d 923, 926. “As a general matter, when the key issue is the defendant’s identity as the perpetrator, rather than whether the crime was committed, the State is required to negate any reasonable probability of misidentification.” Draughn, supra (quotation omitted); Ingram, supra.
Here, the jury obviously believed that Payton was credible. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient to support a conviction. State v. Tapps, 02-0547 (La.App. 5 Cir. 10/29/02), 832 So.2d 995, 1001, writ denied, 02-2921 (La.4/21/03), 841 So.2d 789. It is the role of the fact-finder to weigh the respective credibilities of the witnesses, and a reviewing court will not second-guess the credibility determinations of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983); Accord, State v. Wallace, 00-1745 (La.App. 5 Cir. *554 5/16/01), 788 So.2d 578, 584, writ denied, 01-1849 (La.5/24/02), 816 So.2d 297.
We find that, viewing the evidence in this case in the light most favorable to the prosecution, the jury could have found beyond a reasonable doubt that the State proved the essential elements of the offenses, including the perpetrator’s identity. See State v. Lai, 04-1053 (La.App. 5 Cir. 4/26/05), 902 So.2d 550, writ denied, OS-1681 (La.2/3/06), 922 So.2d 1175. In the present case, Detective Jackson [ intestified that the surviving victim, Wiley Payton, viewed the photographic lineup for approximately ten to fifteen seconds before pointing to defendant’s photograph, and stating “that’s him.” At trial, Mr. Payton testified that, when he picked out the man in the photograph, he was “sure” it was the person who robbed and shot him.
Further, the State presented evidence and testimony that defendant’s fingerprint was recovered from the rear passenger door of the victim’s vehicle. The testimony and evidence, even defendant’s own admission, placed defendant in the vicinity of the crime scene around the time of the crimes on the night in question. This assignment of error lacks merit. »
In his second assignment of error, defendant contends that the trial court erred in denying the motion for mistrial. Defendant specifically argues that the trial court should have granted his motion for a mistrial on the ground that Detective Syni-gal, a sequestered witness, was directed by an assistant district attorney to speak with Detective Goff, another sequestered witness, regarding evidence in this case. The State responds that Detective Synigal’s query of Detective Goff occurred after they had both testified in the State’s case, and it did not make it impossible for defendant to obtain a fair trial.
In essence, defendant argues that, because of a sequestration violation, the trial court should have granted a mistrial. Mistrial is a drastic remedy and is warranted only where remarks result in substantial prejudice sufficient to deprive defendant of a fair trial. State v. Ventris, 10-889 (La.App. 5 Cir. 11/15/11), 79 So.3d 1108, 1123, writ denied, 13-1532 (La.4/17/14), 138 So.3d 616. Whether a mistrial should be granted is within the sound discretion of the trial court, and the denial of a motion for mistrial will not be disturbed absent an abuse of that discretion. State v. Massey, 10-861 (La.App. 5 Cir. 6/14/11), 71 So.3d 367, 372, writs denied, 11-1621 (La.4/20/12), 85 So.3d 1259 and 13-2850 (La.8/25/14), 147 So.3d 691 (citing State v. Smith, 04-340 (La.App. 5 Cir. 10/26/04), 888 So.2d 280, 285).
La. C.E. art. 615 sets forth the rule regarding sequestration of witnesses:
A. As a matter of right; exceptions. On its own motion the court may, and on request of a party the court shall, order that the witnesses be excluded from the courtroom or from a place where they can see or hear the proceedings, and refrain from discussing the facts of the case with anyone other than counsel in the case. In the interests of justice, the court may exempt any witness from its order of exclusion. However, this Article does not authorize exclusion of:
(1) A party who is a natural person;
(2) A single officer or single employee of a party which is not a natural person designated as its representative or case agent by its attorney;
(3) A person whose presence is shown by a party to be essential to the presentation of his cause such as an expert; or
(4) The victim of the offense, upon motion of the prosecution; however, if a victim is to be exempted from the exclusion order, the court shall require that *555 the victim give his testimony before the exemption is effective and the court shall at that time prohibit the prosecution from recalling the victim as -a witness in the state’s prosecution in chief and in rebuttal. The court shall also enter such other order as may appear reasonably necessary to preserve decorum and insure a fair trial, provided that the victim shall not be allowed to sit at the counsel table.
B. Violation of exclusion order. A court may impose appropriate sanctions for violations of its exclusion order including contempt, appropriate instructions to the jury, or when such sanctions are insufficient, disqualification of the witness.
(Emphasis added).
The purpose of sequestration is to assure that a witness testifies as to his own knowledge, to prevent witnesses from being influenced by the testimony of others, and to strengthen the role of cross-examination in developing facts. Further, a violation of the sequestration order does not warrant a mistrial, absent an indication that the infraction materially prejudiced the defendant. State v. Barber, 30,019 (La.App. 2 Cir. 01/21/98), 706 So.2d 563, 577-78.
At trial, when the State presented Detective Synigal as a witness, defense counsel cross-examined her regarding a separate homicide in Jefferson Parish 112linked to the instant case by .40-caliber-easings recovered from both crime scenes that ballistics verified were fired from the same gun. Through questioning, defense counsel elicited testimony, although Detective Synigal stated that she had no personal knowledge of the second homicide, about the similarity of the two incidents. Detective Synigal testified that she had learned that the same gun was used in the murder in the present case and the murder that occurred on November 7, 2010, because the casings matched. She also testified that defendant could not have committed the November 7, 2010 incident because he was in jail at that time.
During its case-in-chief, defense counsel recalled Detective Synigal as a witness and questioned her again about the November 7, 2010 crime. On cross-examination, the State further questioned Detective Synigal about the November 7, 2010 murder in order to clear up a misstatement of facts. Defense counsel objected, and the trial court sustained the defense’s objection.
After a recess, the trial court allowed the State to question Detective Synigal but limited the prosecutor to only one question. The State questioned Detective Sy-nigal as follows: “Detective Synigal, after reviewing the facts of the November 7th Metairie murder have you determined how many perpetrators were involved in that incident?” Detective Synigal responded that there was only one perpetrator. Defense counsel also questioned Detective Synigal, who admitted that she had briefly spoke about her testimony with Detective Rhonda Goff. Detective Synigal also testified that she knew that the rule of sequestration meant that she was not to discuss testimony.
Defense counsel requested that the trial court strike Detective Synigal’s entire testimony because of the violation of the sequestration order. The trial court allowed defense counsel to cross-examine Detective Synigal regarding the sequestration violation. The court also verified that Detective Goff was also a 1 iswitness subpoenaed in this case and was also subject to sequestration. During cross-examination by the defense, Detective Synigal admitted that she spoke with Detective Goff that morning regarding the November 7, 2010 homicide. Detective Synigal also testified that she specifically spoke to Detective Goff *556 about the number of perpetrators in the November 7, 2010 homicide. The trial judge further questioned Detective Syni-gal, who testified that based on the information she received from Detective Goff she changed her answer regarding the number of perpetrators in the November 7, 2010 homicide. Detective Synigal also testified that she did not discuss any aspect of the instant case.
At that time, defense counsel moved for a mistrial. Defense counsel argued that there was an obvious violation of the witness sequestration order and that defendant was highly prejudiced by Detective Synigal’s testimony. The State responded that this event occurred because it corrected a misstatement of fact by defense counsel and that defendant was not prejudiced.
The trial court denied defendant’s motion for a mistrial but admonished the jury as follows:
An issue arose not long ago in this case right after Detective Synigal was called to testify, you recall Detective Synigal?
At this time I’m going to order that the question that was put to her about how many, roughly how many perpetrators were involved in the November Me-tairie homicide, I’m ordering that that question and her answer that she gave today be stricken from the record.
I am also going to order in connection therewith that you disregard that question and her answer, today’s question and answer. Do you understand that?
Further, the court barred Detective Goff from testifying and the State and the defense from referencing anything about Detective Synigal’s testimony except her direct testimony. Defense counsel objected to the court’s ruling.
114After reviewing the record before us, we find no error in the trial court’s ruling. First, the violation of a sequestration order does not warrant a mistrial, absent an indication that the infraction materially prejudiced the defendant. State v. Barber, supra. Here, defendant has failed to show how he was prejudiced. The .jury was admonished to disregard the clarifying remarks so it was left with the testimony that a very similar crime was committed while defendant was incarcerated and could not have been the perpetrator.
Furthermore, the record was clear that there were two perpetrators with two different caliber weapons on the night in question. Based on the foregoing, we find no abuse of the trial court’s discretion in its denial of defendant’s motion for mistrial. This assignment of error lacks merit.
In the last assignment of error, defendant argues that the trial court erred in failing to hold the State accountable for discovery violations regarding the fingerprint evidence. Specifically, defendant argues that the State failed to provide the side-by-side fingerprint comparisons by Lieutenant Abadie that matched defendant’s fingerprint to a latent print lifted from the victim’s truck. Defendant also argues that the State failed to inform him that Lieutenant Abadie compared and excluded the fingerprints of defendant’s identical twin brother.
The State responds that defendant was provided with the fingerprint card and a photocopy of the latent print lifted from the vehicle. The State also argues that defendant was not prejudiced by the information that the fingerprint recovered by police did not match the fingerprint of defendant’s twin brother, Joshua Humbles.
La.C.Cr.P. art. 718(2) requires the State, on defendant’s motion, to produce documents and tangible objects that are within its possession, custody or control and that are intended for use by the State as evi *557 dence at the trial. The State is |1Kunder a continuing obligation to promptly disclose additional evidence that may be discovered or that it decides to use as evidence at trial. La. C.Cr.P. art. 729.3.
When a party fails to comply with the provisions of the discovery articles, “the court may order such party to permit the discovery or inspection, grant a continuance, order a mistrial on motion of the defendant, prohibit the party from introducing into evidence the subject matter not disclosed, or enter such other order, other than dismissal, as may be appropriate.” La.C.Cr.P. art. 729.5(A). It is within the trial court’s discretion to choose an appropriate remedy for a discovery violation that will offset any possible prejudice. State v. Williams, 12-305 (La.App. 5 Cir. 5/16/13), 119 So.3d 131, 145, writ denied, 13-1338 (La.12/6/13), 129 So.3d 529.
Criminal discovery rules are intended to eliminate unwarranted prejudice, which arises from surprise testimony and evidence in order to permit the defense to respond to the State’s case and allow the defense to properly assess the strength of the State’s case. In general, “discovery violations do not provide grounds for reversal unless they have actually prejudiced the defendant.” State v. Garrick, 03-137 (La.4/14/04), 870 So.2d 990, 993 (per cu-riam).
In the present case, defendant was aware in 2010 and defense counsel was aware no later than April 14, 2011 that defendant’s fingerprint was found on the victim’s vehicle. Defense counsel admitted that he considered hiring a fingerprint expert but did not. The trial court, noting that defense counsel did not make any effort to have independent fingerprint testing, found no discovery violation with respect to the display of the fingerprint evidence. We agree.
With respect to testing Joshua Humbles’ fingerprints, Lieutenant Abadie testified at trial that he compared defendant’s twin brother’s fingerprint to the fingerprint recovered from the victim’s vehicle and found no match. Defense |1ficounsel objected on the ground that he was not informed that a fingerprint comparison was performed on defendant’s twin. The State argued that defendant was issued a report stating that defendant’s fingerprint was a positive match, which excluded all other people. The State further asserted that', since 2010, the defense was aware that the State had the fingerprints of defendant’s twin on file. The trial court overruled defendant’s objection.
Again, defendant was aware in 2010 and defense counsel was aware no later than April 14, 2011 that the State had discovered Joshua Humbles’s fingerprints on evidence recovered in this case. There was no indication that the State’s in-court disclosure of this evidence deprived defense counsel of an adequate opportunity.to use the material effectively.
Further, defense counsel neither moved for a mistrial based on these alleged discovery violations, nor requested a continuance in accordance with La.C.Cr.P. art. 729.5. Moreover, defendant does not show that he was prejudiced by any discovery failure on the part of the State. Based on the foregoing, defendant has not presented proof of any prejudice as a result of the trial court’s denial of defendant’s request for exclusion of evidence. This assignment of error lacks merit.

Errors patent

As is our routine practice, we have reviewed the record for errors patent, according to La.C.Cr.P. art. 920. Our review reveals no errors . that require correction.

*558
Conclusion

Based on the foregoing, we affirm defendant’s convictions and sentences.

AFFIRMED.

. Only those individuals actually sentenced to death or confinement at hard labor shall be committed to the Department of Corrections. La. R.S. 15:824(C); State v. Cox, 13-494 (La.App. 5 Cir. 12/12/13), 131 So.3d 357, 358 n. 1; State v. Vance, 06-452 (La.App. 5 Cir. 11/28/06), 947 So.2d 105, 109 n. 3, writ denied, 07-0152 (La.9/28/07), 964 So.2d 351.

. At the time of trial, Payton had been married to Mr. Bailey’s wife's sister for two years.

. Subsequently, these two .40-caliber casings were linked to an unrecovered gun that was *551 also connected to two other crimes in Jefferson Parish between October 19, 2010 and November 7, 2010. Defendant was incarcerated on November 7, 2010 so he is not suspected in the November 7, 2010 crime.

. Chemical testing revealed no gunshot residue on Bailey’s hands that evening.

. On October 28, 2010, ten slides of fingerprints were lifted from Bailey's truck but none of the prints lifted could be used for investigative purposes.