| | |
|---|---|
| STATE OF LOUISIANA | NO. 23-KA-103 |
| VERSUS | FIFTH CIRCUIT |
| JHONNA LEONARD | COURT OF APPEAL |
| | STATE OF LOUISIANA |

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 20-6704, DIVISION "M"
HONORABLE SHAYNA BEEVERS MORVANT, JUDGE PRESIDING

November 08, 2023

**JUDE G. GRAVOIS**
**JUDGE**

Panel composed of Judges Jude G. Gravois,
Robert A. Chaisson, and John J. Molaison, Jr.

**AFFIRMED; REMANDED FOR CORRECTION OF THE UNIFORM**
**COMMITMENT ORDER**
 **JGG**
 **RAC**
 **JJM**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Morgan Naquin
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA
Honorable Paul D. Connick, Jr.
Thomas J. Butler
Monique D. Nolan
Matthew Whitworth
Brittany Beckner

COUNSEL FOR DEFENDANT/APPELLANT,
JHONNA D. LEONARD
Bertha M. Hillman

**GRAVOIS, J.**

Defendant, Jhonna D. Leonard, appeals his conviction and sentence for third degree rape upon a known juvenile in violation of La. R.S. 14:43. On appeal, he argues that the trial court committed a prejudicial error when it allowed the State to admit his video-recorded statement to the police at trial. Finding no merit to defendant's argument, we affirm his conviction and sentence and remand for correction of a patent error.

## PROCEDURAL HISTORY

On December 10, 2020, the Jefferson Parish District Attorney filed a bill of information charging defendant, Jhonna D. Leonard, with third degree rape upon a known juvenile in violation of La. R.S. 14:43. Defendant pled not guilty at his arraignment on March 8, 2021.

On April 7, 2021, defendant filed omnibus motions, including a motion for discovery of defendant's statement. On that same date, the State and the defense filed a Discovery Receipt and Stipulation for Reciprocal Discovery. On June 16, 2022, the State filed a Notice of Intent to Use Confession or Statement. Following a hearing on June 20, 2022, the trial court found that defendant's video-recorded statement would be admissible at trial over defense objections. That same day, the matter proceeded to trial before a twelve-person jury, and on June 22, 2022, the jury unanimously found defendant guilty as charged.

On July 14, 2022, after a victim impact statement was presented, the trial court sentenced defendant to twenty-two years' imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence. The sentencing hearing was held open and continued on July 20, 2022. At that hearing, the sex offender

registration requirements were discussed, and a sex offender registration form was signed.[1]  This timely appeal followed.

On appeal, defendant challenges the trial court's admission of his video-recorded statement to the police.

## FACTS

J.W.,[2] who was seventeen years old at the time of trial, testified that in February of 2020, when she was fifteen years old, she lived in an apartment at 933 East Monterey Court with her grandmother, mother, and siblings.  On February 25, 2020, after marching with her high school band in a Mardi Gras parade, J.W. was dropped off at home, where she was alone with defendant.  She explained that defendant was her sister's father who was visiting at the time.  When she first came inside, defendant asked her if "the weed man was outside."  After asking defendant for a "cover" and lying on the couch, she played on her phone.  Defendant then asked her if she had had sex.  They also talked about bed bugs in the home.  She relayed that he said, "Oh, I got bit by a bed bug, do you want to see where?"  He then pulled out his penis, and J.W. looked away.  Defendant then went outside to meet the "weed man," after which he sat in a chair and smoked marijuana.  J.W. described that subsequently defendant sat near her on the couch and began rubbing her legs.  She pushed his hand off of her several times.  Defendant then got on his knees, placed his hand on her vagina, and put his mouth on her vagina.  She explained that her skirt was up and her underwear was pulled to the side.  Defendant then held her legs open and put his penis in her.  She stated that it was

---

[1] At the conclusion of sentencing, the State noticed its intent to file a habitual offender bill of information against defendant.  However, the record shows that on January 12, 2023, the State informed the court that it would not pursue the habitual offender bill.

[2] The initials of the victim and any defendant or witness whose name can lead to the victim's identity (*i.e.*, parent, sibling, or relative with the same last name as the victim) are used pursuant to La. R.S. 46:1844(W)(3), which allows the court to protect the identity of a crime victim who is a minor or a victim of a sex offense by using his or her initials. *State v. E.J.M., III*, 12-774, 12-732 (La. App. 5 Cir. 5/23/13), 119 So.3d 648, 652 n.1.

painful and she started crying. She testified that she did not feel like she could leave or fight him. She was scared because he was a "big man."

After he got off of her, defendant went to the bathroom and J.W. fixed her clothes. She asked him, "What was that about?," but could not recall his response. She testified that she lay on the couch, and her mother returned home. At the time, J.W. did not tell her mother about this incident with defendant because she believed her mother would shoot him. After calling and telling a friend about what happened, she told her sister, J.W.2, in the bathroom. She testified that the next morning, she told her mother and grandmother what had happened with defendant. The police were called and J.W. was taken to the hospital by ambulance and examined by a doctor. She stated that she met with another individual at the Child Advocacy Center ("CAC") and recounted what happened.

J.W.2, J.W.'s sister, who was fourteen years old at the time of trial, testified that her family attended a parade on Mardi Gras Day in February 2020. After J.W. finished marching in the parade, J.W. and defendant left early and were alone together at the family residence. When J.W.2 and her remaining family members returned home, J.W. dragged her into the bathroom. J.W.2 recalled that J.W. was crying and told her that defendant had touched her. She instructed J.W. to tell their mother what happened, but J.W. did not like this idea because she was afraid. She stated that when she and J.W. walked out of the bathroom, they found their grandmother and brought her back into the bathroom where they told her what had happened.[3] She stated that the police arrived the next morning.

F.W., the victim's grandmother, testified that in February of 2020, she lived in an apartment at 933 East Monterey Court in Terrytown with her daughter, N.W., and her grandchildren. During that time, F.W. allowed defendant to visit with his

---

[3] It is noted, as stated above, that J.W. testified that she told her grandmother about this incident the next morning.

children in the family home for a few weeks. On Mardi Gras day, she went with her grandchildren to a parade in which J.W. was marching as a member of her school's band. When they later returned home, defendant and J.W. were already present. She stated that after they got home, everyone was getting "settled down for the night."

At "some point," apparently the next day, J.W. came in her room and stated, "[Defendant] touched me, and I didn't like it, and it hurted [sic]." When asked where J.W.'s mom was at this time, F.W. responded that she was in the kitchen cooking breakfast for everyone. After that conversation, F.W. instructed defendant to speak with her in the bathroom and she told him what he did was wrong. Defendant denied knowing what she was talking about. F.W. testified that she was upset, hurt, and crying. She then told defendant to get his stuff and leave her house. While bringing defendant to the bus terminal, she told him that she was disappointed in him, he could never come back, and he would never see his children again. Defendant indicated he would go to Florida. After returning to her residence, the police were called, and J.W.'s mother brought her to the hospital. She confirmed that she gave a statement to the police on February 26, 2020.

On February 26, 2020, Deputy Rashard Boykin with the Jefferson Parish Sheriff's Office ("JPSO") responded to a call at 933 East Monterey Court concerning a rape. Upon his arrival, Deputy Boykin spoke with F.W. and J.W, and J.W. was then transported by EMS to the hospital. He then turned the case over to the personal violence department.

Nicolas Sanderson, formerly a detective with the JPSO, was notified by Deputy Boykin regarding a third degree rape in this case. Detective Sanderson was informed that defendant had already left the scene, after which he spoke with

the victim at Children's Hospital.[4] J.W. relayed to him that on the previous day, she and defendant were alone in the apartment, and he "performed oral sex on her and penetrated her vaginally with his penis." He recalled J.W. was visibly upset and distraught. He stated that a rape kit was done. Detective Sanderson contacted the CAC so J.W. could be forensically interviewed. He remotely monitored the interview in a separate room. He said that J.W.'s statement at the CAC was consistent with what J.W. had told him.[5] He further testified that he interviewed J.W.'s mother, grandmother, and two sisters.

As a result of his investigation, Detective Sanderson obtained an arrest warrant for defendant, which went into the National Crime Information Center ("NCIC") system. Defendant was arrested approximately one year later in Pensacola, Florida. Following his transport back to Louisiana, defendant was advised of his rights and provided a video-recorded statement on March 5, 2021. Detective Sanderson relayed that during that statement, defendant denied the allegations against him and claimed an individual named "Kent," whom he described as a "potential boyfriend" of the victim's mother, was responsible. The detective explained that the victim's family was unable to identify such a person. He indicated that in defendant's statement, he alleged that the victim saw him masturbating to a pornographic film and brushed up against his shoulder or arm.[6] Detective Sanderson stated that the victim identified defendant as her rapist.

---

[4] Detective Sanderson explained that items, like bedding sheets and clothing, were collected during the investigation.

[5] The recorded video, admitted into evidence, was similar to J.W.'s trial testimony.

[6] In that recorded statement, defendant waived his *Miranda* rights. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). He stated that his "baby momma" had multiple children and that "OCS" had been called multiple times. He discussed a man who "used to stay with the grandma" and explained that he was no longer staying with her when he went to visit. Defendant identified "Kent" as the "boyfriend of the grandma." He told the detective that they were trying to give him someone else's charge. Defendant explained that in February, around Mardi Gras, he came down to help N.W. with the children, and he stayed at the grandmother's house for four or five days. He repeatedly denied raping J.W. He explained to the detective that while he was alone in the house, he showered, lay on the couch, and watched a "flick." He confirmed that he was "cranking it." He recalled that J.W. came home while everyone was still at the parade. He said that she came in the room and he brushed past her

Detective Sanderson obtained a search warrant for a DNA sample from defendant and a buccal swab was subsequently collected. He confirmed that he requested a DNA comparison be conducted on the buccal swab taken from defendant and the victim's rape kit.

Sitara Shirwani, an expert in the field of forensic DNA analysis, provided that she authored a report in relation to the instant case. She analyzed the specimens from J.W.'s "pediatric physical evidence recovery kit" and a reference sample from defendant. Ms. Shirwani found the swabs taken from J.W.'s inner thigh, genitalia, perineum swab, and anal swab to be negative for seminal fluid and semen. She determined the vaginal swab from J.W. tested positive for sperm. With respect to the "epithelial or skin fraction" of the vaginal swab, Ms. Shirwani determined that the DNA profile obtained was a mixture of DNA from two contributors, and she could not make a conclusion regarding the contributor status of defendant. The DNA profile obtained from the "sperm fraction" of the vaginal swab was at least a hundred billion times more likely to have DNA originated from J.W. and defendant than from her and an unknown contributor.

## LAW AND ANALYSIS

In his only assignment of error, defendant argues that the trial court erred in allowing the State to introduce defendant's video-recorded statement to police since it was prejudicially disclosed beyond the discovery deadline for no good cause show. Defendant contends that the video of his statement was only provided to him four days prior to the start of trial. Although it is undisputed that the State did not intentionally withhold this information, he argues that it has no effect on

---

when he exited the room. He then put his clothes back on. He stated that he went to Florida afterwards.

It is noted that defendant identified "Kent" as the boyfriend of the victim's grandmother in his statement, but the detective testified at trial that "Kent" was the boyfriend of the victim's mother.

the "prejudicial effect of the late disclosure." Defendant claims that the recorded statement was highly prejudicial because he admitted to knowing and staying with the victim's grandmother when the rape occurred. He asserts that because defendant suggested in his recorded statement that someone else may have raped the victim, the jury was "left to wonder why he did not call" that individual to testify. Defendant concludes that the trial court should have excluded the recorded statement or granted a continuance to allow the defense to locate and subpoena the witness.

In the present case, on April 7, 2021, defendant filed omnibus motions, which included a motion for discovery of defendant's statement. On that same date, the State and the defense filed a Discovery Receipt and Stipulation for Reciprocal Discovery. On June 16, 2022, the State filed a Notice of Intent to Use Confession or Statement pursuant to La. C.Cr.P. art. 767 and La. C.Cr.P. art. 768. Specifically, the State sought to introduce the following: 1) any and all statements made by defendant to the victim/witnesses on or about February 25, 2020, regarding JPSO item no. B-20814-20 and provided to defense counsel in open file discovery; and 2) any and all statements made by defendant to officers on or about February 24, 2021, regarding JPSO item no. B-20814-20 and provided to defense counsel in open file discovery.

On June 20, 2022, prior to the start of trial, the State informed the court that defense counsel previously waived motions. The State explained that the week before the hearing, the State learned of its intention to introduce defendant's statement. The State called Detective Sanderson to the stand. He testified that prior to speaking with defendant, he advised defendant of his *Miranda* rights utilizing a standard JPSO waiver of rights form. He asserted that he neither offered defendant anything in exchange for making a statement, nor forced or coerced defendant in any way to make a statement.

Following the detective's testimony, defendant indicated that he did not seek to exclude the statement on constitutional grounds. He asserted that after the State's discovery of the statement, he was informed of its existence "late last week." He requested that the court prohibit the prosecution from using the statement at trial pursuant to La. C.Cr.P. art. 729.5.

In response, the State explained that it was unaware of the statement made by defendant to Detective Sanderson, as well as the corresponding police report and waiver of rights form, because the statement occurred a year after the incident occurred. The State further explained that the "screener and/or trial attorney" was not alerted when the detective uploaded the statement and police report into the system called "VeriPic." Rather, the State became aware of the statement when the physical disc of the recorded statement "came up in evidence." The State maintained there was not a reference in the State's file or documentation of the statement's existence. On Wednesday of the previous week, the State alerted defense counsel of this statement and provided it to him.[7] The State also confirmed the statement was an hour in length. The State claimed that defendant's statement was not inculpatory in that he did not admit he committed the offense with which he was charged. The State acknowledged that it was inculpatory to the extent that defendant admitted he knew the victim and was present at the scene of the crime in the time frame alleged.

Afterwards, the trial judge stated the following:

The Court having heard the testimony and the argument believes this actually goes to the heart of *Brady* and also Code of Criminal Procedure Article 729.3. There is a continuing duty to disclose upon learning of it Wednesday, so that was five days ago the State immediately disclosed that this existed. In accordance with 729.5, they are to comply sanctions. The Court has options to—"It may order a party to permit the discovery or inspection. It may grant a

---

[7] The prosecutor concluded that as an officer of the court, he in good faith did "attempt to remedy the situation as quickly as I could, and I have no one to blame but myself for not having known about it, but there was no reason for me to know about it under the way the system is set up."

continuance, or it may order a mistrial on the motion of the
Defendant, or it may prohibit the party from introducing into evidence
a subject matter not disclosed or enter such other order other than
dismissal as may be appropriate."

The Court finds that considering that this entire video is less than one
hour and there was a two-page report, there is no prejudice. There is
ample time to review a one hour video or less and to proceed today.
For that reason, the Court does not believe a sanction is appropriate.
Again, it was not as though we got to trial this morning, and it was
disclosed. It was a statement that the Court does find is appropriate
for introduction based on officer's testimony and the reasons given by
the State.

The court noted the defense's objection. Thereafter, during Detective

Sanderson's trial testimony, defendant's statement and a redacted recording were

admitted into evidence.

Under La. C.Cr.P. art. 716(C), upon motion of the defendant, the court shall

require the State to inform the defendant of the substance of any oral statement

made by the defendant or any codefendant which the State intends to offer in its

case in chief at trial, whether before or after arrest, in response to interrogation by

any person then known to the defendant or the codefendant to be a law

enforcement officer.

The State is under a continuing obligation to promptly disclose additional

evidence that may be discovered or that it decides to use as evidence at trial. *See*

La. C.Cr.P. art. 729.3.[8] In the event that the State does not timely disclose

evidence, La. C.Cr.P. art. 729.5(A) provides that the trial judge "may order such

party to permit the discovery or inspection, grant a continuance, order a mistrial on

motion of the defendant, prohibit the party from introducing into evidence the

---

[8] La. C.Cr.P. art. 729.3 provides:

If, subsequent to compliance with an order issued pursuant to this Chapter and
prior to or during trial, a party discovers additional evidence or decides to use
additional evidence and such evidence is or may be, subject to discovery or
inspection under the order issued, he shall promptly notify the other party and the
court of the existence of the additional evidence, so that the court may modify its
previous order or allow the other party to make an appropriate motion for
additional discovery or inspection.

subject matter not disclosed, or enter such other order, other than dismissal, as may be appropriate." It is within the trial court's discretion to choose an appropriate remedy for a discovery violation that will offset any possible prejudice. *State v. Williams*, 12-305 (La. App. 5 Cir. 5/16/13), 119 So.3d 131, 145, *writ denied*, 13-1338 (La. 12/6/13), 129 So.3d 529 (citing *State v. Chaplain*, 03-338 (La. App. 5 Cir. 7/29/03), 852 So.2d 1088, 1089).

The Louisiana Supreme Court has previously held that discovery rules are intended to eliminate unwarranted prejudice arising from surprise testimony to permit the defense to meet the State's case and to allow proper assessment of the strength of its evidence in preparing a defense. *State v. Bradstreet*, 16-80 (La. App. 5 Cir. 6/30/16), 196 So.3d 876, 892, *writ denied*, 16-1567 (La. 6/5/17), 220 So.3d 752. The State's failure to comply with discovery procedures does not automatically require reversal. The appellate court must examine the circumstances of the case to determine whether the defendant was prejudiced and whether any prejudice resulting from the State's non-compliance with discovery procedure caused the trier of fact to reach the wrong conclusion. *Williams*, *supra*. A conviction is only reversible when the defendant is prejudiced as a result of the discovery violation. *State v. Lestrick*, 13-289 (La. App. 5 Cir. 10/09/13), 128 So.3d 421, 431, *writ denied*, 13-2643 (La. 4/25/14), 138 So.3d 643.

Upon review, in light of the following, we find that the trial court did not err by admitting the video-recorded statement in question into evidence at trial.

In *State v. Fisher*, 380 So.2d 1340 (La. 1980), on the day of trial, the district attorney informed the defendant of a prior statement made to a police officer. The Louisiana Supreme Court determined that the State complied with discovery because notice was given immediately upon coming into possession of it. The court held that it was convinced from the evidence that the district attorney was in good faith and had no knowledge of the statement prior to the time it was fully

disclosed to the defendant. The court indicated that the disclosure of the statement was made prior to the opening statements. Under these circumstances, the court considered that the State substantially complied with La. C.Cr.P. arts. 716(C) and 729.3. *Id*. at 1343-45.

In *State v. Johnson*, 380 So.2d 32, 33 (La. 1980), the defendant argued that the trial court erred in overruling his objection to the introduction of an inculpatory statement into evidence, which was made by him to an officer at the time of his arrest, on the ground that the State did not inform him of the statement in its answer to his motion for discovery and erred in refusing to order a mistrial on the same ground. *Id*. The Louisiana Supreme Court held that it was satisfied that the assistant district attorney was in good faith and had no knowledge of the statement prior to Friday, March 30, 1979. The disclosure of the statement was made that same day, and though the defendant did not actually receive it until Monday, April 2, 1979, the defendant had actual notice two days before commencement of the trial. The court pointed out that the defendant did not seek a continuance as a result of not receiving notice of the statement earlier. Under the circumstances, the court found that the State substantially complied with La. C.Cr.P. arts. 716(C) and 729.3. Thus, the court concluded that the trial judge did not abuse his discretion in overruling the defendant's objection to the introduction of the statement in evidence or in failing to order a mistrial. *Id*. at 33-34.

In the present case, defendant was given notice of the statement five days before the start of trial. As the State only became aware of the statement days before trial, it could not have given notice of the same to defendant any earlier. Defendant does not dispute that the State gave notice of the statement promptly upon its discovery or that the State acted in good faith. Under these circumstances, like in *Fisher*, *supra*, and *Johnson*, *supra*, we find that the State substantially complied with La. C.Cr.P. arts. 716(C) and 729.3. Additionally, had defendant

needed more time to prepare a defense based on the discovery of the statement, he could have requested a continuance, which he did not. *See State v. Humbles*, 14-643 (La. App. 5 Cir. 3/11/15), 169 So.3d 547, 557, *writ denied*, 15-725 (La. 3/24/16) 190 So.3d 1195.

Additionally, defendant has not demonstrated that he was prejudiced by the fact that he did not receive the recorded statement until five days before trial. At the hearing, defendant generally argued that the statement should be excluded due to the untimely disclosure and did not assert any specific prejudice he suffered from the timing of the notice. Now, on appeal, defendant asserts that he was prejudiced because he did not have time to locate and secure a witness, "Kent," whom he suggested in his statement raped the victim.

As pointed out by the State, since defendant waived his rights and agreed to give a recorded statement to the detective, defendant arguably knew the statement existed and knew the substance of the statement prior to trial. The defense was also given notice of the recorded statement by the State five days before trial. As such, defendant was not "surprised" by the recorded statement or lulled into a misapprehension of the State's case by actions of the State. Additionally, as previously mentioned, defendant did not seek a continuance as a result of not receiving earlier notice of the statement. Further, the information included in the statement, concerning defendant's admission that he knew the victim and was present at the residence at the time of the incident, was corroborated by the State's witnesses, including the victim, her sister, and her grandmother. We find that defendant has not shown how the introduction of the evidence in question—the video-recorded statement—caused the trier of fact to reach the wrong conclusion. Based on the foregoing, we find that defendant has not presented proof of any prejudice suffered as a result of the trial court's admission of the video-recorded statement at trial. This assignment of error is without merit.

## ERRORS PATENT REVIEW

The record was reviewed for errors patent, according to La. C.Cr.P. art. 920, *State v. Oliveaux*, 312 So.2d 337 (La. 1975), and *State v. Weiland*, 556 So.2d 175 (La. App. 5 Cir. 1990).

The State of Louisiana Uniform Commitment Order ("UCO")[9] fails to include as a "Sentence Condition" pre-printed on the form that defendant shall comply with the sex offender registration statute under the provisions of La. C.Cr.P. art. 895 and La. R.S. 15:541, *et seq.*  The UCO specifically contains an unchecked box next to a statement that defendant shall comply with these requirements.  The record reflects that the trial court informed defendant that he was required to comply with the sex offender notification/registration requirements, and a written copy thereof is included in the record.  The advisal is also included in the sentencing minute entry.  To ensure accuracy in the record, we remand this matter for the trial court to correct the UCO to reflect that defendant shall comply with the sex offender registration statute.  We further direct the Clerk of Court for the 24th Judicial District Court to transmit the corrected UCO to the appropriate authorities in accordance with La. C.Cr.P. art. 892(B)(2) and the Department of Corrections' legal department.

### DECREE

For the reasons assigned above, defendant's conviction and sentence are affirmed and this matter is remanded for correction of the UCO as set forth above.

**AFFIRMED; REMANDED FOR
CORRECTION OF THE UNIFORM
COMMITMENT ORDER**

---

[9] A June 25, 2022 *Nunc Pro Tunc* minute entry corrects the original June 14, 2022 sentencing minute entry with respect to the sentencing being held open and a status hearing set on the habitual bill.  The record contains multiple UCOs dated June 25, 2022, two of which are stamped as "Denied."  The UCO dated June 25, 2022, which was not stamped as denied, is used for purposes of this errors patent review.

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**NOVEMBER 8, 2023** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES
NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 23-KA-103

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE SHAYNA BEEVERS MORVANT (DISTRICT JUDGE)
MONIQUE D. NOLAN (APPELLEE)          THOMAS J. BUTLER (APPELLEE)          BERTHA M. HILLMAN (APPELLANT)

**MAILED**
BRITTANY BECKNER (APPELLEE)
HONORABLE PAUL D. CONNICK, JR.
(APPELLEE)
MATTHEW WHITWORTH (APPELLEE)
ASSISTANT DISTRICT ATTORNEYS
TWENTY-FOURTH JUDICIAL DISTRICT
200 DERBIGNY STREET
GRETNA, LA 70053